GARFIELD TRUST COMPANY
v.
The UNITED STATES.
No. 442–58.

United States Court of Claims.
Jan. 11, 1963.

Llewellyn A. Luce, Washington, D. C., for plaintiff.

Joan T. Berry, Washington, D. C., with whom was Acting Asst. Atty. Gen., Joseph D. Guilfoyle, for defendant. Frances L. Nunn, Washington, D. C., was on the briefs.

WHITAKER, Judge.

Plaintiff's petition asks recovery of the sum of $4,578.00 with interest from the United States. The basis of the claim is the unjust enrichment of the United States at the direct expense and to the detriment of the plaintiff. The facts, as stipulated by the parties, are these:

Plaintiff, a New Jersey trust company and financing institution, has held, since December 7, 1950, a duly recorded chattel mortgage of that date, in the principal sum of "not less than" [sic] $25,000 on goods and chattels of Pacific Wire Corporation. Subsequent to December 7, 1950, Pacific Wire transferred to the Wire Corporation of America all of its assets, subject to the chattel mortgage. The Wire Corporation, having sustained a fire loss which destroyed the goods and chattels underlying the chattel mortgage, collected from the insurance carrier $160,000 in settlement thereof.

On March 25, 1953, Wire Corporation, being unable to pay its debts as they ma-

tured, filed its petition in the District Court of the United States for the Judicial District of New Jersey under Chapter XI of the Act of Congress relating to bankruptcy. After payment in full of administration expenses, the petition proposed, *inter alia*, an arrangement for paying all general unsecured creditors, whose claims came into existence after the debtor corporation was formed, 50 percent in cash upon confirmation, and the balance of 50 percent, payable 25 percent one year after the confirmation date and 25 percent two years after the confirmation date, to be evidenced by promissory notes. The business of the debtor was to continue.

On May 28, 1953, the Director of Internal Revenue filed with the Referee in Bankruptcy proof of the tax claim of the United States in the amount of $15,-700.80 with interest, covering withholding taxes and FUTA taxes for certain periods in 1952 and 1953.

On October 27, 1953, plaintiff filed in the District Court proof of its secured claim. On December 2, 1953, the District Court entered an order authorizing the Receiver to pay 50 percent of plaintiff's claim, the balance to be paid in accordance with the terms and conditions of the amended plan of arrangement, the lien of the chattel mortgage, however, to be a first lien on the assets of the debtor corporation.

On December 23, 1953, the Referee signed an order directing the Receiver to pay to the Director of Internal Revenue the sum of $17,553.44, the total amount due the United States, which was paid by voucher dated March 3, 1954.

Subsequently, the Receiver paid plaintiff, in three installments, a total of $7,-206.32 on the amount of $11,784.32 due plaintiff in cash under the order by the Referee dated December 2, 1953, leaving a balance due on the cash payment of $4,578.00 plus interest.

The stipulation of facts, in section 4, recites:

"A Receiver was appointed. On July 14, 1953, said Receiver filed 'Receiver's Final Report and Petition for Allowances' which showed that there was $160,686.75 available for distribution to the creditors of Wire Corporation of America."

On January 30, 1956, the Referee signed an "Order Closing Estate", which reads as follows:

"It appearing to the Court that the above named debtor filed a petition under Chapter XI of the Bankruptcy Act, and that its plan of arrangement was confirmed on the 14th day of July, 1953, and

"It further appearing that all cash payments under the plan have been made and the Receiver having filed his final report and account showing all funds disbursed,

"It is on this 30th day of January, 1956 ORDERED that the report and account of the Receiver be and the same is hereby approved and that the Receiver be and he is hereby discharged of his trust and his bond cancelled, and

"It is further ORDERED that the matter be closed.

"Referee in Bankruptcy"

There are no further assets of Wire Corporation with which to pay plaintiff the balance due and to become due.

As shown by the stipulation of facts, plaintiff made no protest to the District Judge, or otherwise attacked in the district court the orders disbursing the funds of the estate or the "Order Closing Estate." Consequently, the Order of the Referee was a final and conclusive adjudication of the rights of all parties with notice of the proceedings before the Referee and who had filed their claims therein, and was *res judicata* as to all issues presented or which could have been presented in those proceedings. It cannot be collaterally attacked in any other tribunal. Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940).

In the Stoll case the Federal District Court, in a reorganization proceeding, had entered an order cancelling a guaranty on corporate bonds, and plaintiff's challenge of the jurisdiction of the bankruptcy court to cancel the guaranty was overruled. The Supreme Court held that the bankruptcy court's decision on the issue of its jurisdiction to cancel the guaranty was *res judicata* and could not be collaterally attacked in a State court suit on the guaranty by plaintiff.

In Chicot County Drainage Dist. v. Bank, supra, the bank brought suit in the District Court for the Eastern District of Arkansas to collect on some bonds of the Chicot County District, the bank's rights in which had been adjudicated by the same district court sitting in bankruptcy. In this suit the district court held that its former order in the bankruptcy proceedings were void because it was based on a statute subsequently declared unconstitutional by the Supreme Court. The Circuit Court of Appeals affirmed, but the Supreme Court reversed on the ground that the bank had not attacked the validity of the statute in the bankruptcy proceedings. At page 375 of 308 U.S., at page 319 of 60 S.Ct., 84 L.Ed. 329 it said:

" * * * As parties, these bondholders had full opportunity to present any objections to the proceeding, not only as to its regularity, or the fairness of the proposed plan of readjustment, or the propriety of the terms of the decree, but also as to the validity of the statute under which the proceeding was brought and the plan put into effect. Apparently no question of validity was raised and the cause proceeded to decree on the assumption by all parties and the court itself that the statute was valid. There was no attempt to review the decree. If the general principles governing the defense of *res judicata* are applicable, these bondholders, having the opportunity to raise the question of invalidity, were not the less bound by the decree because they failed to raise it. Cromwell v. County of Sac, 94 U.S. 351, 352 [24 L.Ed. 195]; Case v. Beauregard, 101 U.S. 688, 692 [25 L.Ed. 1004]; Baltimore Steamship Co. v. Phillips, 274 U.S. 316, 319, 325 [47 S.Ct. 600, 71 L. Ed. 1069]; Grubb v. Public Utilities Comm'n, 281 U.S. 470, 479 [50 S.Ct. 374, 74 L.Ed. 972]."

The foregoing opinion cited Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104. In that case, in an opinion by Mr. Justice Reed, the Court quoted with approval the following from Dowell v. Applegate, 152 U.S. 327, 340, 14 S. Ct. 611, 616, 38 L.Ed. 463:

"But that was a question which the Circuit Court of the United States was competent to determine in the first instance. Its determination of it was the exercise of jurisdiction. Even if that court erred in entertaining jurisdiction, its determination of that matter was conclusive upon the parties before it, and could not be questioned by them or either of them collaterally, or otherwise than on writ of error or appeal to this court."

It is apparent from the Supreme Court's opinions in the above cases that the action of the Referee in Bankruptcy was a final adjudication of the rights of the parties and cannot be collaterally attacked in this court. If the bank was dissatisfied with the Referee's orders in the Chapter XI proceedings, its only recourse was by appeal to the District Judge, and from his decision to the Court of Appeals, and by certiorari to the Supreme Court. It cannot collaterally attack his action in this court.

█ Furthermore, it does not appear from the stipulation of facts that the payment in full of the United States tax claim so exhausted the funds of the bankrupt estate that there were not available funds sufficient to pay 50 percent of plaintiff's claim, as ordered, inasmuch as it appears from the Receiver's "Final Report and Petition for Allowances" that there was available for dis-

tribution to the creditors of Wire Corporation the sum of $160,686.75. To whom this was disbursed, we do not know. Plaintiff has, therefore, failed to show that the payment of the claim of the Director of Internal Revenue was responsible for the failure to pay to it the sum which the Referee ordered the Receiver to pay in his order of December 2, 1953.

Plaintiff's petition is, accordingly, dismissed.

JONES, Chief Judge, and DAVIS, DURFEE, and LARAMORE, Judges, concur.