**AMERICAN GUARANTY CORPORATION, Appellant,**

v.

**Harry H. BURTON, as Receiver et al., Appellees.**

**No. 6855.**

United States Court of Appeals
First Circuit.
July 14, 1967.

---

Marcien Jenckes, Boston, Mass., with whom Claude R. Branch and Brinton P. Roberts, Boston, Mass., were on brief, for appellant.

Richard S. Salzman, Atty., Dept. of Justice, with whom Barefoot Sanders, Asst. Atty. Gen., Edward P. Gallogly, U. S. Atty., and Morton Hollander, Atty., Dept. of Justice, were on brief, for The Secretary of the Treasury and others, appellees.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Plaintiff, debtor in a proceeding under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701-99, seeks a judgment declaring void the fees of one per cent of plaintiff's payments to creditors required to be collected from the estate and contributed to the Referees' Salary and Expense Fund under 11 U.S.C. §§ 65, 68, 79. The alleged invalidity lies in the fact that the Judicial Conference of the United States, although required by 11 U.S.C. § 65(b) (1) to establish "schedules of graduated additional fees", established "a fixed fee" schedule, *i. e.*, one per cent of all obligations paid.

Since $141,077.11 had been deposited to the account of the United States Treasurer for allocation to the Referees' Salary and Expense Fund, plaintiff joins as defendants the Treasurer of the United States and the Secretary of the Treasury. It seeks recovery of $77,696 collected but not yet deposited by the Receiver. Finally it joins as defendants the Judicial Conference of the United States, and its authorized agent the Director of the Administrative Office of the United States Courts.

The Secretary of the Treasury, the Treasurer, and the Director of the Administrative Office moved to dismiss the action for failure to state a claim and for lack of waiver of the sovereign immunity of the United States. The district court granted the motion on the latter ground concluding that, as to the $141,077.11, the claim was against the United States, which had not consented to be sued; and, as to the remaining

amount in the hands of the Receiver, that the United States was an indispensable party since the claim sought relief "which would expend itself upon the United States Treasury". We affirm.

To follow the analysis reiterated recently in Dugan v. Rank, 372 U.S. 609, 83 S.Ct. 999, 10 L.Ed.2d 15 (1963), we ask, first, whether a judgment on the merits for plaintiff would "expend itself on the public treasury * * * [or] interfere with the public administration", Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947). Plaintiff argues that the funds in the hands of the Receiver are not in the possession or subject to the claim of the United States, that the Receiver is an officer of the court, not of the United States. As to the funds already covered into the Treasury, plaintiff argues that such fees were not due and payable until the case is closed and that therefore the United States only holds these monies subject to the court's final disposition of the estate. A further contention is that, since sovereign immunity applies only when payment from the general revenues is requested, and since the Referees' Salary and Expense Fund has shown a consistent and substantial surplus, there is no present sovereign interest in the collections made for the Fund.

We find no merit in any of these arguments. As to the funds already covered into the Treasury, the interest of the United States is clear, even though the estate is not yet closed. While perhaps still subject to possible adjustment, the monies, as plaintiff itself alleges, have been deposited "in accordance with stipulations filed and approved by [this court]." The government's interest was more than merely possessory.[1] As to the argument that the government can have no interest in a special fund, particularly a solvent one, we note without surprise that plaintiff was able to cite no authority. Funds so held are fully as much money in the Treasury as are general receipts. E. g., Haskins Bros. & Co. v. Morgenthau, 66 App.D.C. 178, 85 F.2d 677, 681 (1936), cert. denied 299 U.S. 588, 57 S.Ct. 118, 81 L.Ed. 433 (1937).

Apart from the adverse impact of a judgment for plaintiff on the public Treasury, present and prospective, we also acknowledge that the recapture of monies from a fund reserved for administrative expenses would also *pro tanto* and directly "interfere with the public administration".

A second question suggested by *Dugan* is whether a judgment for plaintiff would "restrain the Government from acting, or * * * compel it to act." Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 704, 69 S.Ct. 1457, 1468, 93 L.Ed. 1628 (1949). Both restraint and affirmative action would be compelled—the former in proscribing the assertion of any claim to funds held by the Receiver, and the latter in ordering repayment of funds deposited to the account of the Treasury.

■ The Receiver did not raise the defense of sovereign immunity, and in a technical sense, since he is not an officer of the United States, it is not available to him. Nevertheless, it is clear that he is, as appellant's brief aptly states, "essentially a stakeholder in this action". The appellant seeks to establish its right in a fund held by the Receiver, not by any claim of personal right, but subject to collection by the United States for the Referees' Fund. A judgment for appellant would necessarily be based on a holding that the United States had no right in the fund. Thus, the United States is an indispensable party to the action. See, e. g., Stevens v. Loomis, 334 F.2d 775, 777 (1st Cir. 1964). Since the United States is not and cannot be joined as a defendant, the action cannot proceed.

---

1. Plaintiff attempts to equate the status of these funds with monies detained by internal revenue officers, which funds, though deposited in the Treasury, are by specific statute made subject to suits against Collectors of Internal Revenue. 28 U.S.C. § 1346(a) (1). That statute provides the consent here lacking.

Finally, even if we assumed *arguendo* that the district court had jurisdiction of the action, we note that the motion to dismiss asserted that the complaint failed to state a claim upon which relief could be granted. Although the district court did not reach this issue, it is disposable on the pleadings in the record. Cf. United States v. American Ry. Express Co., 265 U.S. 425, 44 S.Ct. 560, 68 L.Ed. 1087 (1924). Both sides have addressed it in briefs and argument, and we address it now.

We do not find the clear purport in the word "graduated" that plaintiff finds. We grant that in common parlance the phrase "graduated income tax" connotes the idea of progressivity. But we find the word defined as:

> " * * * 2a: marked with or divided into degrees : divided into or arranged in grades, steps, or successive levels usu. proportionally * * * b *of a tax* : proportional to the size of a taxable base * * *." Webster's Third New International Dictionary 985 (unabridged ed. 1966).

And we note the distinction between the statutory "graduated * * * fees" and "graduated rates". The former is the progressive product of a static rate and changing amounts; the latter, of progressive rates and changing amounts. When we view the statute, 11 U.S.C. § 65(b) (1), we find that the first reference to additional fees is in the context of the initial surveys of the need for bankruptcy referees to be made by the Director of the Administrative Office of the United States Courts. The statute requires that he shall report to the Conference concerning "the schedules of additional fees to be charged in * * * arrangement * * * cases." Only later comes a solitary reference to the Conference's duty to determine "graduated" additional fees. The key adjective is absent in 11 U.S.C. §§ 68 and 79.

 The report of the Senate Committee on the Judiciary, accompanying this legislation in 1946, is illuminating. It stated, "The bill contemplates a simplified system based upon two essential levies: (1) a fixed filing fee, and (2) an additional fixed charge in asset, arrangement, and wage-earner cases according to the size of the estate. These charges will replace the present varied and often complex ones." S.Rep. No. 959, 79th Cong., 2d Sess., U.S. Code Cong. Serv. p. 1235 (1946). This seems to be exactly the concept which was implemented by the Judicial Conference. In the context of the statutory scheme it is plainly reasonable to construe a "graduated" fee as being opposed to a "fixed" or flat fee—that is, as one that changes in amount as the estate on which it is computed changes in size. A fee of one per cent of the estate satisfies that construction.

Therefore, we conclude that, whether the case is disposed of on the issue of jurisdiction or is treated on the merits, the district court was correct in dismissing the action against all defendants.

Affirmed.

ALDRICH, Chief Judge, joins in the opinion on the first ground stated by the court, but expresses no views with respect to the second.