AMERICAN GUARANTY CORPORA-
TION and Harry H. Burton,
Receiver

v.

The UNITED STATES.

No. 408–66.

United States Court of Claims.

Oct. 18, 1968.

George E. McMurray, Jr., Washington, D. C., attorney of record, for plaintiffs; W. John Kenney, Washington, D. C.; Claude R. Branch, Providence, R. I.; and Anthony Zell Roisman, Washington, D. C., of counsel.

James G. Greilsheimer, with whom was Asst. Atty. Gen. Edwin L. Weisl, Jr., for defendant. Edward Weintraub, Washington, D. C., of counsel.

Before LARAMORE, Acting Chief Judge, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

DURFEE, Judge.

Plaintiff filed a voluntary petition under Chapter XI of the Bankruptcy Act to effect an arrangement with its creditors, which was subsequently confirmed by the District Court. As part of the expense of the bankruptcy proceedings, plaintiff was required to deposit $141,-077.11 for additional fees for the Referees' Salary and Expense Fund. This sum was computed at one percent of the face amount of debts paid in cash in distribution to creditors under the Bankruptcy Act.

Plaintiff now seeks to recover the amount of additional fees it deposited in the Bankruptcy Court on the ground that the one percent fee schedule promulgated by the United States Judicial Conference was not a "graduated" fee as required by the Act.

Plaintiff has already presented its case to the District Court, where it was dismissed for lack of jurisdiction because it was an action against the United States to which the Government had not consented. The Court of Appeals for the First Circuit affirmed dismissal below on the same jurisdictional ground, and also concluded that "whether the case is to be disposed of on the issue of jurisdiction or treated on the merits, the District Court was correct in dismissing the action against all defendants". We first determine that plaintiff is not barred or estopped by the doctrine of *res judicata*, inasmuch as both the District Court and the Court of Appeals have found that they had no jurisdiction of the action. See, American Guaranty Corp. v. Burton, et al., 1 Cir., 380 F.2d 789 (1967). Accordingly, plaintiff is not barred by *res judicata* by virtue of that suit. United States v. United States Fidelity & Guaranty Co., et al., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940). See generally, Restatement of the Law, Judgments, § 49, Comment C:

> * * * If, however, the court decides that it has no jurisdiction over the defendant and also that no cause of action is shown, the latter decision is so clearly unnecessary to the result

that it is not a bar to a subsequent action in a different court.

The money in question represented fees authorized by the Bankruptcy Act to be collected for the Referees' Salary and Expense Fund. 11 U.S.C. § 68(c) (2), and determined thereunder by the Judicial Conference of the United States. 11 U.S.C. § 65(b) (1). The purpose of such fees is to bear the costs and expenses to the Government of the proceedings. 11 U.S.C. § 737(2). As of the time involved in this action, the fees set by the Conference pursuant to the statute providing for a "graduated" fee were one percent (1%) of the total obligations paid or extended in a Chapter XI arrangement proceeding. The validity of these fees for the referees' fund is challenged by plaintiff and asserted to be void, invalid, and of no effect because it established a "fixed fee" not in any way "graduated" as required by the enabling statute.

Section 11 U.S.C. § 65(b) (1) authorizes the Judicial Conference to determine, among other requirements, " * * * schedules of *graduated* additional fees to be charged in * * * arrangement * * * cases." * * * [Emphasis supplied.]

The decision of the Court of Appeals First Circuit on this same factual and legal issue, while not binding on us as *res judicata* because of the court's lack of jurisdiction, is nevertheless cogent and persuasive:

> We do not find the clear purport in the word "graduated" that plaintiff finds. We grant that in common parlance the phrase "graduated income tax" connotes the idea of progressivity. But we find the word defined as:
>
> " * * * 2a: marked with or divided into degrees: divided into or arranged in grades, steps, or successive levels usu. * * * proportional to the size of a taxable base * * *." Webster's Third New International Dictionary 985 (unabridged ed. 1966). American Guaranty Corporation v. Burton, Receiver, et al., 1 Cir., 380 F.2d 789 (1967) at p. 792.

Although plaintiff asserts that the definition in Webster's Dictionary relied upon by the Court of Appeals is in error, as evidenced by the affidavit of the dictionary publisher, the affidavit fails to point out any specific error in the definition of "graduated" accepted by the Court of Appeals.

The court added, at p. 792:

> And we note the distinction between the statutory "graduated * * * fees" and "graduated rates". The former is the progressive product of a static rate and changing amounts; the latter, of progressive rates and changing amounts. When we view the statute, 11 U.S.C. § 65(b) (1), we find that the first reference to additional fees is in the context of the initial surveys of the need for bankruptcy referees to be made by the Director of the Administrative Office of the United States Courts. The statute requires that he shall report to the Conference concerning "the schedules of additional fees to be charged in * * * arrangement * * * cases." Only later comes a solitary reference to the Conference's duty to determine "graduated" additional fees. The key adjective is absent in 11 U.S.C. §§ 68 and 79.

The statute directs that it is the "fee", the dollar amount paid into the referees' fund by the debtor, which is "graduated". Under the one percent schedule determined by the Judicial Conference, these fees will vary in accordance with the amount of debts paid or extended in the proceedings, i. e., the larger the obligation paid by the debtor, the larger the additional one percent fee due the referees' fund. This method of computation certainly does not result in a flat fee, fixed in amount without regard to the size of the estate in arrangement, such as the $32.00 filing fee imposed in every bankruptcy case by 11 U.S.C. § 68 (c) (1); it results in a fee *graduated* in amount according to the amount of the obligations paid or extended in the proceeding.

The interpretation of "graduated additional fees" by the United States Judicial Conference, is entitled to great weight, since the Conference was delegated by the Congress with the responsibility for establishing such fees under the statute.

This court in its recent decision in Crawford et al. v. United States, 376 F.2d 266 at p. 274, 179 Ct.Cl. 128, at p. 142 (1967), cert. den. 389 U.S. 1041, 88 S.Ct. 781, 19 L.Ed.2d 831 (1968), stated:

> These circumstances call for application of the rule that administrative practice consistent and generally unchallenged "has peculiar weight when it involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion, of making the parts work efficiently and smoothly while they are yet untried and new." * * *

In Udall v. Tallman et al., 380 U.S. 1, at p. 16, 85 S.Ct. 792 at p. 801, 13 L.Ed. 2d 616 (1965), Supreme Court stated:

> When faced with a problem of statutory construction, this Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. * * *

Although the Schedule of Fees and Charges was changed in 1966 to provide under Part II thereof, changes in the percentages on total obligations paid or extended, to be used in computing additional fees under 11 U.S.C. § 65(b) (1) for three different periods of time since 1947, this was not a change in the interpretation of "graduated fees" by the Conference, and was not retroactive.[1] When it became apparent in 1966 that there was over $10 million in the Referees' Fund which was more than sufficient to pay referees' salaries and expenses and other authorized expenditures, the Conference merely changed the amount of percentages to be used in computing graduated fees under the new schedule.

There has been no material change by Congress in the provisions of the statute as to graduated fees in arrangement cases since 1946. The legislative history at that time is significant. The Report of the Senate Committee on Judiciary accompanying this legislation, stated:

> The bill contemplates a simplified system based upon two essential levies: (1) a fixed filing fee, and (2) an additional fixed charge in asset, arrangement, and wage-earner cases *according to the size of the estate*. These charges will replace the present varied and often complex ones. S.Rep. No. 959, 79th Cong., 2d Sess., U.S.Code Cong. Serv., p. 1235 (1946). [Emphasis supplied.]

The House Judiciary Committee interpreted graduated fees in its Report, as follows:

> The bill contemplates a simplified system based upon two essential levies: (1) a fixed filing fee and (2) an additional fixed charge in asset, arrangement and wage-earner cases graduated *according to the size of the estate*. H. Report No. 2666, 77th Cong., 2d Sess., p. 17. [Emphasis supplied.]

The Judicial Conference construed a "graduated" fee (as opposed to a "fixed" or flat fee) to be one that changes in amount as the amount of debts in the bankrupt estate under arrangement, changes in total amount. By computing the fee at one percent of this amount, the fee is "graduated" according to the total amount of obligations paid or extended in a Chapter XI arrangement proceeding.

---

1. *Fees to be Charged in Arrangement Cases filed under Chapter XI*

"One and one-half percent on total obligations paid or extended in Chapter XI cases filed from July 1, 1947 to December 31, 1953, inclusive.

"One percent on total obligations paid or extended in Chapter XI cases filed from January 1, 1954 through December 31, 1965.

"One percent of the first One Hundred Thousand dollars of total obligations paid or extended in Chapter XI cases, and one-half of one percent on the balance in all cases filed on and after January 1, 1966."

An impressive array of contrary opinion was offered by plaintiff from expert lexicographers and etymologist, as to the exact meaning and definition of the word "graduated", when used in connection with computing legal fees.

Justice Holmes has given us a classic and more flexible definition when he said:[2]

> \* \* \* A word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used. \* \* \*

■ Under the circumstances and the time in which the word "graduated" is used in the statute, the definition of "graduated additional fees" by the Judicial Conference of the United States was a reasonable interpretation and exercise of the discretionary power delegated to it by the Congress.

The Government raises the further question as to whether plaintiff can now attack the fee requirement in the confirmation of its Plan of Arrangement when it should have challenged the legality of the fee required before payment into the Fund. Plaintiff's petition alleges that plaintiff, Harry H. Burton, as Receiver, paid $141,077.11 to the Clerk of the District Court for the District of Rhode Island as "additional fees" for the referees' salary and expense fund. It alleges further that said amount was paid pursuant to the schedule of "additional fees" promulgated by the Judicial Conference under color of authority of Section 37(b) (1) and Section 40(c) (2) of

the Bankruptcy Act. (11 U.S.C. §§ 65 (b) (1) and 68(c) (2) respectively). Said payments were carried into the Treasury of the United States for the account of the referees' salary and expense fund.

The question here is whether plaintiff can object at this time and in this court to one aspect of a plan of arrangement which it voluntarily submitted, and which was confirmed by the District Court in a Chapter XI bankruptcy proceeding.

The aspect of its own plan of arrangement which plaintiff now attacks is the one percent fee for the referees' salary and expense fund.

Chapter XI of the Bankruptcy Act requires that the debtor seeking a plan of arrangement must deposit sufficient funds (as defined by the Judicial Conference of the United States) for the referees' salary and expense fund before such plan can be confirmed by the District Court acting in its capacity as a bankruptcy court. 11 U.S.C. §§ 737(2), 766(1) and 767(2).

■ Plaintiff's final plan of arrangement made provision for payment of "all costs of administration entitled to priority under such Act." Section 104 of the Bankruptcy Act[3] indicated that one of the costs of administration entitled to priority is the additional fee for the referees' salary and expense fund. Hence, plaintiff's own plan of arrangement provided for the fees which it now claims are illegal. In other words, plaintiff chose not to raise this issue in the bankruptcy proceeding[4] although it had the right to do so.

---

2. Towne v. Eisner, 245 U.S. 418, 425, 38 S.Ct. 158, 159, 62 L.Ed. 372, L.R.A. 1918D (1918).

3. Section 1044 of the Bankruptcy Act (11 U.S.C. § 104) states in pertinent part:
 "(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including \* \* \* the fees for the referees' salary and expense fund; \* \* \*."

4. The letters plaintiff wrote to the referee in bankruptcy did not properly raise the issue of legality of fees since plaintiff voluntarily paid the fees under its own plan of arrangement. But even if this action did raise the issue, plaintiff did not petition for review to the District Judge the referee's tacit refusal to rule on this issue.

 The letters written to the Judicial Conference of the United States certainly had no legal bearing on the specific litigation in which plaintiff was involved.

Plaintiff contends that it did not have a right to contest the validity of the fees within the framework of the bankruptcy proceeding. This contention is erroneous.

■ A referee in bankruptcy has jurisdiction, among other things, "to perform such of the duties as are by this title conferred on courts of bankruptcy * * *". (11 U.S.C. § 66). One of the duties of the courts of bankruptcy is to see that all of the provisions of this chapter have been complied with (11 U.S.C. § 766) and one of those provisions is that the debtor deposit the necessary funds into the referees' fund (11 U.S.C. § 737(2)). Hence the referee in bankruptcy has the specific statutory authority to impose fees for the referees' fund as well as general authority to impose other costs of the bankruptcy proceeding. See In re Walker Grain Company, 19 F.2d 795 (N.D.Tex.1927), and cases cited therein.[5]

■ Consequently, if plaintiff had refused to pay the fees for the referees' fund, the referee would have been obliged to order the payment of such fees, refuse confirmation or dismiss the petition. See, In re Crisp, 239 F. 419 (E.D. Tenn.1917) (Court dismissed debtor's voluntary petition in bankruptcy on recommendation of referee for failure to pay the court filing fees).

Under the applicable provisions of the Bankruptcy Act[6] plaintiff (aggrieved party) would then have the right to appeal—all the way up to the Supreme Court (on certiorari) if it so desired.

Plaintiff denies that it had this right and argues: "In fact as has already been conclusively determined (American Guaranty Corp. v. Burton et al., 380 F.2d 789 (C.A. 1st, 1967)[7] the bankruptcy proceeding could not have adjudicated the validity of the fees because the District Court had no jurisdiction of the claim."

5. See also, Ex parte Peterson, 253 U.S. 300, 40 S.Ct. 543, 64 L.Ed. 919 (1920) for the general proposition that Federal district courts have inherent power to impose costs for compensation for services of referees, masters, etc. Id. at pp. 314–317, 40 S.Ct. 543.

6. 11 U.S.C. § 47:
 "(a) The United States courts of appeals, * * * are invested with appellate jurisdiction from the several courts of bankruptcy in their respective jurisdictions from the several courts of bankruptcy, either interlocutory or final, and in controversies arising in proceedings in bankruptcy, to review, affirm, revise, or reverse, both in matters of law and in matters of fact: * * *.
 * * * * *
 "(c) The Supreme Court of the United States is vested with jurisdiction to review judgments, decrees, and orders of the United States courts of appeals in proceedings under this title in accordance with the provisions of the laws of the United States now in force or such as may hereafter be enacted. * * *"
 11 U.S.C. § 48:
 "(a) Appeals under this title to the United States courts of appeals shall be taken wtihin thirty days after written notice to the aggrieved party of the entry of the judgment, order or decree complained of, proof of which notice shall be filed within five days after service or, if such notice be not served and filed, then within forty days from such entry."
 11 U.S.C. § 67:
 "(c) A person aggrieved by an order of a referee may, within ten days after the entry thereof or within such extended time as the court upon petition filed within such ten-day period may for cause shown allow, file with the referee a petition for review of such order by a judge and serve a copy of such petition upon the adverse parties who were represented at the hearing. Such petition shall set forth the order complained of and the alleged errors in respect thereto. Unless the person aggrieved shall petition for review of such order within such ten-day period, or any extension thereof, the order of the referee shall become final. Upon application of any party in interest, the execution or enforcement of the order complained of may be suspended by the court upon such terms as will protect the rights of all parties in interest. * * *"

7. This suit was brought by the debtor (plaintiff here) in the District Court for the District of Rhode Island as a declaratory judgment proceeding during the pendency of the bankruptcy proceeding.

Plaintiff, however, misconstrues the holding of the court in *American Guaranty Corp.*, supra. That case merely held that the suit was, in effect, against the United States as an indispensable party because plaintiff had already paid the fees, thereby giving control over the fees to the U.S. Treasury. Since the United States did not waive its immunity in that suit, the court lacked jurisdiction over the parties, and consequently had to dismiss the petition. However, at no time did the court deal with the issue of the scope of the *bankruptcy court's* jurisdiction before any fees are paid into the Treasury. In this regard, plaintiff's reliance on *American Guaranty Corp.*, supra, is misplaced.

██ As a general proposition, the district courts, *qua* bankruptcy courts, "have exclusive jurisdiction of the debtor and his property, wherever located." (11 U.S.C. § 711). As pointed out in the above discussion, the bankruptcy court has specific authority to issue orders imposing fees for payment into the referees' fund and the orders of the bankruptcy court are appealable to the appropriate circuit court of appeals and then to the Supreme Court by way of certiorari.

There is no legal basis, and plaintiff has not cited any authority, for distinguishing between orders of the bankruptcy court which involve *fees* as opposed to orders dealing with *other matters*, all of which are within the scope of the Bankruptcy Act.

For example, the case of In re Street et al., 184 F.2d 710 (3rd Cir. 1950), specifically dealt with the question of bankruptcy proceeding fees, including those going into the referees' fund. Contrary to plaintiff's argument here, that party challenged those fees in the bankruptcy proceeding itself. In fact, the claimant lost before the referee and District Court, but prevailed before the Court of Appeals. The 3rd Circuit held that the fees and expenses ("The bulk of these expenses result from the trustee's commissions *and the charge for the referees' salary and expense funds.*") Id. at 711, fn. 1 [Emphasis supplied] should not be charged to mortgagees of debtor's mortgaged property where there was a substantial margin between the mortgagee's claims and the selling price of the property. Cf., Reconstruction Finance Corp. v. Cohen et al., 179 F.2d 773 (10th Cir. 1950).

The imposition of fees for the referees' fund was also successfully challenged within the framework of the bankruptcy proceeding in the case of In re La Rowe, 91 F.Supp. 52 (D.Minn.1950). In reversing the order of the referee imposing such fees, the District Court was called on to interpret Section 40, sub. c(2) of the Bankruptcy Act (11 U.S.C. § 68) which specifically deals with fees for the referees' salary and expense fund.

Another case in which the question of fees for the referees' fund was raised within the bankruptcy proceeding itself was In re Solar Mfg. Corp., 215 F.2d 555 (3rd Cir. 1954). In this proceeding the 3rd Circuit reduced the fee of the referee and special master from $5,200 to $2,600, even though, it noted, that " * * * None of this goes to the referee himself" * * *, but goes instead for the " * * * benefit of appropriate public funds." * * * Id. at 562.

██ Plaintiff's dilemma here arose, in short, through its own failure to challenge the imposition of referees' fees in the bankruptcy proceeding itself. It could have and should have challenged those fees instead of voluntarily depositing the fees as part of its plan of arrangement. It then could have appealed any adverse order—which would have resulted in a full adjudication of the issue in the bankruptcy proceeding itself.[8] Since plaintiff chose not to take advantage of the proper avenue of redress within the bankruptcy proceeding itself, it is now estopped from collaterally challenging the judicially confirmed plan of

---

8. See footnote 4, supra, for sections of the Bankruptcy Act which delineate appellate procedures.

arrangement in this court. This court has held that the orders of a referee in bankruptcy are not subject to collateral attack Garfield Trust Co. v. United States, 312 F.2d 751, 160 Ct.Cl. 178, cert. den., 373 U.S. 923, 83 S.Ct. 1524, 10 L.Ed. 2d 422 (1963).[9] In that case we said [312 F.2d 753, 160 Ct.Cl. at 182–183]:

> It is apparent from the Supreme Court's opinions in the above cases that the action of the Referee in Bankruptcy was a final adjudication of the rights of the parties and cannot be collaterally attacked in this court. If the bank [a secured creditor] was dissatisfied with the Referee's orders in the Chapter XI proceedings, its only recourse was by appeal to the District Judge, and from his decision to the Court of Appeals, and by certiorari to the Supreme Court. *It cannot collaterally attack his action in this court* [Emphasis supplied.]

The Bankruptcy Act itself states that "Upon confirmation of an arrangement —(1) the arrangement and its provisions *shall be binding upon the debtor * *.*" (11 U.S.C. § 767) [Emphasis supplied.] With regard to this section it is said in 9 Collier on Bankruptcy, ¶ 9.25 (14th ed.):

> The binding effect given by § 3671(1) [11 U.S.C. § 767(1)] to an arrangement and its provisions means that those provisions are conclusively determined to create adjudicated rights and liabilities *which are not open to collateral attack.* [Emphasis supplied.]

Plaintiff's reliance on United States v. Ward et al., 257 F. 372 (8th Cir. 1919) is unjustified. Even assuming *arguendo* that the court was correct in holding that the fees awarded by the bankruptcy court were subject to collateral attack as outside of its jurisdiction,[10] the court limited this rule to situations where the referee orders compensation different than that "clearly imposed upon a referee by said law [Bankruptcy Act]." [Id. at 376]. This is not the situation in the instant case because the provision of the Bankruptcy Act in question did not clearly impose a specific fee, but authorized the exercise of some discretion (by the Judicial Conference) in setting fees. The court in *Ward,* supra, went on to state the rule when the fees are not specifically imposed by statute but within the discretion of the court: "* * * if parties are aggrieved by the action of the court in this behalf, they must, by petition for review or appeal, bring the matter directly before an appellate tribunal, and that, if this is not done, the judgment becomes final and is not subject to collateral attack." [Id. at 377]. It is this latter rule which applies to the instant case.

 In conclusion, it is abundantly clear from the Bankruptcy Act and the case law that a plan of arrangement which has been judicially confirmed is not subject to collateral attack, and plaintiff here is estopped from so doing. This is merely a specific application of the general rule that "One who accepts the benefits of a judgment, decree or judicial order is estopped to deny the validity thereof." American National Bank & Trust Co. of Chicago v. Taussig et al., 255 F.2d 765, 769 (7th Cir. 1958); cf., In re Tinkoff, 85 F.2d 305, 307 (7th Cir. 1936), cert. den. Tinkoff v. Chicago Title & Trust Co., 299 U.S. 611, 57 S.Ct. 314, 81 L.Ed. 450 (1937). ("Adjudications of the referee, if not reviewed within the time and in the manner prescribed, have the force and effect of judgments and orders of the District Court.")

---

9. See also, Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940); Stoll v. Gottlieb, 305 U.S. 165, 59 S.Ct. 134, 83 L.Ed. 104 (1938); Frey v. Frankel, 361 F.2d 437, 442 (10th Cir. 1966); In re Ginger Machine Products Corp., 296 F.2d 107 (6th Cir. 1961).

10. For authority to the contrary on this point, see In re International Match Corp., 190 F.2d 458, 464 (2d Cir.), cert. den. sub nom., Ehrhorn v. International Match Realization Co. Ltd., 342 U.S. 870, 72 S.Ct. 113, 96 L.Ed. 655 (1951), see generally, 3 Collier on Bankruptcy, ¶ 62.-06 fn. 10 (14th ed.).

For the above reasons, plaintiff is estopped from challenging its own plan of arrangement, which has been judicially confirmed, in a collateral proceeding in this court.[11]

In any event, we also decide, for the reasons given in the first part of the opinion, that the fee for the referees' fund resulting from the imposition of a one percent charge is "graduated" within the meaning of the Bankruptcy Act (11 U.S.C. § 68(c) (2)). Consequently, defendant's motion for summary judgment is granted, plaintiff's motion is denied, judgment is entered for defendant, and plaintiff's petition is dismissed.

---

11. The fact that the Order of the Bankruptcy Court closing the estate stated that it was without prejudice to claims pending in other courts, is of no help to plaintiff since this subsequent order does not detract from the Bankruptcy Court's Order of Confirmation which was without qualification, and is now final and binding. (11 U.S.C. § 767).