*557 ROTH,
concurring and dissenting
Although the majority engages in a thoughtful discussion of the issues presented in this appeal, I cannot join the conclusion that the plaintiffs' Endangered Species Act (ESA) claims brought on behalf of the Hawksbill and Green Sea Turtles do not satisfy the notice requirements of § 11(g) of the ESA, 16 U.S.C. § 1540(g). Accordingly, I would not dismiss the claims brought on behalf of the Sea Turtles. In addition, because I would not dismiss these claims, I have gone on to consider the district's court order refusing plaintiffs' application for a temporary restraining order and preliminary injunction on behalf of the Hawksbill and Green Sea Turtles. I would reverse that order and remand for further proceedings.
*558 I. NOTICE TO “THE SECRETARY”
Although the majority acknowledges the complexity of the task it places upon prospective litigants, the labyrinthine nature of the ESA's statutory and regulatory scheme becomes apparent only upon a closer examination than the one given to it by my colleagues. Section 11(g)(2)(A) of the ESA provides that no citizen suit may be commenced ''prior to sixty days after written notice of the violation has been given . . . ." 16 U.S.C. § 11(g)(2)(A). The Act nowhere specifies the content of this notice but requires that the notice be directed to ''the Secretary, and to any alleged violator ..." Id. Section 1532(15) defines the term "Secretary" to mean "the Secretary of the Interior or the Secretary of Commerce as program provisions are vested pursuant to the provisions of Reorganization Plan Number 4 of 1970." 16 U.S.C. § 1532(15).
A daunting amount of investigation is required before a potential litigant can determine which "Secretary" to serve notice upon. The text of § 1540(g)(2) offers no basis for deciding when notice is to be referred to the Secretary of the Interior and when notice is to be served upon the Secretary of Commerce. Although the ESA refers to Reorganization Plan Number 4 of 1970, that document merely informs the reader that certain functions, formerly committed to other federal agencies, have been transferred to the Secretary of Commerce, including:
(a) All functions vested by law in the Bureau of Commercial Fisheries of the Department of the Interior or its head, together with all functions vested by law in the Secretary of the Interior or the Department of the Interior which are invested through that Bureau or are primarily related to the Bureau, ....
(b) The functions vested in the Secretary of the Interior by the Act of September 22, 1959 (Public Law 86-359, 73 Stat. 642, 16 U.S.C. 760e-760g; relating to migratory marine species of game fish).
5 U.S.C. App. 1 Reorg. Plan 4 (1970).
Potential litigants, who have not given up at this point, can begin combing through Title 50 of the Code of Federal Regulations for a *559 clue as to which Secretary should be served with notice. The first helpful section encountered is 50 C.F.R. § 17.2, which purports to define the scope of the USFWS's regulations on endangered and threatened wildlife and plants:
By agreement between the [United States Fish and Wildlife] Service and the National Marine Fisheries Service, the jurisdiction of the Department of Commerce has been specifically defined to include certain species, while jurisdiction is shared with regard to certain other species. Such species are footnoted in Subpart B of this part, and reference is given to special rules of the National Marine Fisheries Service for those species.
50 C.F.R. § 17.2(b).
A fair reading of this section is that jurisdiction is shared between the USFWS (a Department of the Interior agency) and the NMFS (a Department of Commerce agency), and that the allocation of species to each service will be identified in Subpart B. Such a reading would, however, prove to be incorrect. Although Subpart B contains an exhaustive list of endangered and threatened flora and fauna, it gives no indication which agency possesses jurisdiction for the administration of the ESA as to these species, and it speaks not a word about pre-suit notice. See 50 C.F.R. §§ 17.11 & 17.12.
Not until Title 50, Chapter II, Subchapter C[1] can the reader begin to put it all together. In 50 C.F.R. § 217.2 the reader is informed that the regulations contained in 50 C.F.R., parts 216 through 227,
apply only for fish or wildlife under the jurisdictional responsibilities of the Secretary of Commerce for the purpose of carrying out the Endangered Species Act of 1973 (see Part 222, § 222.23(a)). Endangered species of fish or wildlife other than those covered by these regulations are under the jurisdiction of the Secretary of the Interior. For rules and procedures relating to such species, see 50 C.F.R. Parts 10-17.
*560 50 C.F.R. § 217.2. Section 222.23(a) finally designates some species as coming under the jurisdiction of the Secretary of Commerce: "Atlantic Hawksbill sea turtles (Eretmochelys imbricata)" and "Green sea turtles (Chelonia mydas) breeding colony populations in Florida and on the Pacific Coast of Mexico."[2] Section 222.23(a) also states that there exists a division of agency jurisdiction for sea turtles: "The National Marine Fisheries Service has sole agency jurisdiction for sea turtles while the turtles are in the water and the U.S. Fish and Wildlife Service has jurisdiction for sea turtles while the turtles are on land." Id.
In Chapter IV of Title 50, there finally appear certain joint regulations involving the United States Fish and Wildlife Service, the National Marine Fisheries Service, and the National Oceanic and Atmospheric Administration. With respect to the scope of the regulations on joint administration of the ESA, § 402.01(b) explains:
The U.S. Fish and Wildlife Service (FWS) and the National Marine Fisheries Service (NMFS) share responsibilities for administering the Act. . . . Endangered or threatened species under the jurisdiction of the NMFS are located in 50 C.F.R. § 222.23(a) and 227.4. If the subject species is cited in 50 C.F.R. 222.23(a) or 227.4, the federal agency shall contact the NMFS. For all other listed species the federal agency shall contact the FWS.
50 C.F.R. § 402.01(b). Section 227.4, referred to above, merely identifies Green Sea Turtles as a threatened species. A footnote appended to that section observes that NMFS jurisdiction for sea turtles is limited to when the turtles are in the water. See 50 C.F.R. § 227.4 n.1.
The byzantine nature of these regulations demonstrate the magnitude of the burden the majority's decision places on a party wishing to sue under the ESA. None of these regulations even remotely address the question of notice of intent to sue. Indeed, 50 *561 C.F.R. § 402.01(a) states that the purpose the regulations promulgated in Part 402 is to implement ESA § 7(a) to (d), 16 U.S.C. § 1536(a) to (d), dealing with interagency cooperation. It therefore is not surprising that § 402.01(b) speaks of which office, as between the USFWS or the NMFS, a "federal agency" should contact. This language indicates that the drafters did not have in mind that the regulations would be would be used by potential litigants to identify the Secretary to whom pre-suit notice must be provided.
Additionally, the majority fails to consider that a potential litigant is being encumbered in this way when the full ramifications of a threat to the environment may not be fully appreciated. At this early stage, a plaintiff is not likely to have complete information about all the species affected by a defendant's conduct or about the manner in which those species are harmed. Under the majority's holding, a plaintiff would have to delay bringing suit to enjoin the "taking" of an endangered or threatened sea turtle species until it became apparent whether the turtles were being harmed while on land or in the water. In the mean time, additional animals could be placed in harm's way and irreversible environmental damage done.
Indeed, even with the more complete information developed in this litigation, it is not clear whether the ESA violations plaintiffs complain of with respect to the Sea Turtles occur while the turtles are on land or in the water. As the majority concedes, "plaintiffs allege that the housing project will harm the marine and land habitat of the turtles . . . ." Majority at 18. Yet, the majority contends that the harm to the Sea Turtles cannot be viewed as "occurring solely or primarily on land" because plaintiffs allege that it is the run-off of sediment from the project site and the increase in undertreated sewage in Vessup Bay that threaten the turtles. Id.
The majority's view fails to recognize that the destruction of the food supplies in the turtles' marine habitat is only incidental to the harm that will befall them. Plaintiffs have further alleged that the diminution in the turtles' food supply will cause them to abandon their traditional nesting sites on the beaches abutting Vessup Bay where they are protected under the ESA. The danger according to *562 plaintiffs is that the turtles will move to "the British Virgin Islands, ... a scant 3-4 miles from the project site," where neither species is protected. Plaintiffs' Appellate Br. at 16. There the turtles would be subject to harassment and hunting while on land as well as in the water. Destruction of the turtles' water habitat is only the indirect mechanism by which this "taking" is effected. And, the regulations are not clear whether the land/water distinction refers only to U.S. territorial lands and waters.
Thus, making the notice requirement dependent on the locale that a particular species occupies at a given moment can give rise to unexpected complications. The fact, however, that harsh results may arise from the application of a mandatory prerequisite to suit is not enough to permit relaxation of those requirements. See, e.g., Torres v. Oakland Scavenger Co., 487 U.S. 312, 318 (1988). Nevertheless, my conclusion that the notice given here was appropriate is not dependent on any unfairness of the result. Instead, it is consistent with the case law on pre-suit notice fashioned by the Supreme Court and by this Circuit.
The majority follows Hallstrom v. Tillamook County, 493 U.S. 20 (1989), insisting that it stands for the blanket proposition that nothing less than full compliance with the notice requirement will permit plaintiffs to proceed with their suit. Majority at 19. This unyielding view of Hallstrom ignores the compelling difference that plaintiffs' supposed procedural default here was not "caused by [the] 'failure to take the minimal steps necessary' to preserve their claims." Hallstrom, 493 U.S. at 27-28 (quoting Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 466 (1975)). Rather, it is a product of ambiguities in the statute which require resort to unwieldy regulations.
In Hallstrom, the plaintiffs did not even attempt to provide notice to state and federal agencies even though such notice was clearly required on the face of the citizens suit provision of the Resource Conservation and Recovery Act (RCRA). The RCRA's citizens suit provision unambiguously provided that "no action may be commenced ... (1) prior to sixty days after the plaintiff has given notice of the violation (A) to the Administrator; (B) to the State in which the alleged violation occurs; and (C) to any alleged violator . . . ." 42 U.S.C. § 6972(b) (1982). The RCRA further conspicu *563 ously defined "Administrator" as "the Administrator of the Environmental Protection Agency." 42 U.S.C. § 6903(1). Thus, the statute was clear in specifying to whom pre-suit notice must be directed.
Plaintiffs here, unlike those in Hallstrom, have provided all the notice required by the language of the ESA. Neither the provisions of the ESA nor Reorganization Plan Number 4 of 1970 specify whether the Secretary of the Interior or the Secretary of Commerce ^should receive pre-suit notice. Only upon resort to the regulations governing "Wildlife and Fisheries," which are nowhere cross-referenced by the notice provisions of the ESA, is it possible to infer which Secretary should receive notice.
Our decision in Public Interest Research Group of New Jersey, Inc. v. Hercules, 50 F.3d 1239 (3d Cir. 1995), is helpful to explain why plaintiffs' suit is not foreclosed. There we construed the notice provision of the Clean Water Act, 33 U.S.C. § 1365(b), and its regulations to determine whether the plaintiffs' notice letter had identified the alleged violations with sufficient particularity to provide the recipient with effective notice. Id. at 1241-42. We expressly relied on the regulations enacted under the RCRA in concluding that, for the content of the notice letter to be adequate, it must provide "the EPA and the state with enough information to enable them intelligently to decide whether" to initiate an enforcement action, and must give the alleged violator "enough information to be able to bring itself into compliance." Id. at 1249.
My colleagues maintain that Hercules is of no use here since the focus of that case "was on the contents of the notification given." Majority at 21. Indeed, we drew this distinction in Hercules. 50 F.3d at 1249 ("The Supreme Court's focus in Hallstrom was on the timing of the notice, not on its content."). We did so, not as an end in itself, but because there was "no express requirement in the statute pertaining to the content of a notice letter." Id. Under the CWA, Congress has "delegated to the EPA the authority to determine the necessary contents of a notice letter." Id.; see also 33 U.S.C. § 1365(b) ("Notice under this subsection shall be given in such manner as the Administrator shall prescribe by regulation.").
Congress has incorporated into the ESA no such explicit delegation of authority to specify who should receive pre- suit notice. No *564 provision of the ESA commands that a potential litigant look to the regulations promulgated in connection with it to determine which Secretary is to be given notice. Indeed, not even the regulations directly answer this question.
"[A] literal reading of the statute" simply does not command that notification be made to the Secretary of Commerce. Hallstrom, 493 U.S. at 26. Thus, since no relevant statute or regulation has identified without ambiguity which Secretary is the proper recipient of plaintiffs' pre-suit notice, I do not believe that Hallstrom forecloses plaintiffs' ESA claims on behalf of the Sea Turtles.
II. PRECLUSIVE EFFECT OF THE FIRST ACTION
I write on to briefly address an issue that the majority has no need to resolve: whether Judge Finch's factual finding that plaintiffs had "not proved a causal connection between possible harm to Vessup Bay from silt flowing into the Bay" and the temporary housing project was entitled to be given preclusive effect. Hawksbill Sea Turtle v. Federal Emergency Management Agency, 939 F. Supp. 1195, 1210 (D.C.V.I. 1996) (citing Virgin Islands Tree Boa v. Witt, 918 F. Supp. 879, 904 (D.C.V.I. 1996)). I believe that it was an abuse of discretion for Judge Brotman to rely upon this factual finding in rejecting preliminary injunctive relief for the Sea Turtles. Judge Finch's factual finding was no more than dictum that followed his conclusions that he was blocked from addressing the merits of the plaintiffs' claims brought on behalf of the Sea Turtles under either the ESA or NEPA.
It is immediately apparent that Judge Finch viewed the claims brought on behalf of the Sea Turtles as not properly before the court. In his recitation of the parties' contentions, Judge Finch noted that he would "not do a full analysis" of plaintiffs' claims brought on behalf of the Sea Turtles since plaintiffs had "failed to allege in their Complaint or Amended Complaint that any harm had occurred or would occur to either species of turtle or to sponges or grasses upon which the turtles feed." Tree Boa, 918 F. Supp. at 892 & n.23. Furthermore, Judge Finch found that plaintiffs' NEPA claim brought on behalf of the Sea Turtles was "not properly before [the] Court" since plaintiffs' Amended Complaint *565 "lack[ed] the degree of specificity that would indicate that a specific claim [was] raised as to these species." Id. at 899-900.
The merits of plaintiffs' ESA claims brought on behalf of the Sea Turtles received no consideration before Judge Finch. He indicated that all of plaintiffs' ESA claims failed to satisfy the notice requirement of 16 U.S.C. § 1540(g)(1)(A). Tree Boa, 918 F. Supp. at 891 & 902. Judge Finch's subsequent discussion of plaintiff's "Section 7" ESA claim, 16 U.S.C. § 1536, omits any reference to the Sea Turtles.[3] Virgin Islands Tree Boa, 918 F. Supp. at 902. Plaintiff's "takings" claim brought on behalf of the Sea Turtles, pleaded pursuant to § 9 of the ESA, 16 U.S.C. § 1538, likewise is not addressed. The very brief examination of these claims manifests Judge Finch's apparent belief that they had not been specifically pleaded and were not properly before him.
The rule is well settled that "[o]nce a court expresses the view that it lacks jurisdiction, the court thereafter does not have the power to rule on any other matter." Bunker Ramo Corp. v. United Business Forms, Inc., 713 F.2d 1272, 1279 (7th Cir. 1983); Murdock v. Ute Indian Tribe of Uintah and Ouray Reservation, 975 F.2d 683, 687-88 (10th Cir. 1992); In re Newport Harbor Assoc., 589 F.2d 20, 24 (1st Cir. 1978); Stebbins v. Keystone Ins. Co., 481 F.2d 501, 508-09 (D.C. Cir. 1973); American Guaranty Corp. v. United States, 401 F.2d 1004, 1005-06 (Ct. Cl. 1968). But see Crawford v. Zeitler, 326 F.2d 119, 121 (6th Cir. 1964). As one leading treatise has explained,
[i]f a first decision is supported by findings that deny the power of the court to decide the case on the merits and by findings that got to the merits, preclusion is inappropriate as to the findings on the merits. A court that admits its own lack of power to decide should not undertake to bind a court that does have power to decide.
18 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 4421 (1981).
The law in this Circuit is in accord. In Smith v. Pittsburgh Gage and Supply Co., 464 F.2d 870, 874-75 (3d Cir. 1972), we stated that the *566 scope of the district court's decision was properly limited to the jurisdictional issue resolved by it even though the district court also decided factual issues on the merits. More recently in Bokunewicz v. Purolator Products, Inc., 907 F.2d 1396, 1399 (3d Cir. 1990), we observed that "everything after the denial of jurisdiction . . . , including the discussion of substantive issues, was dicta, pure and simple."
Even if the alternate bases proffered for the denial of injunctive relief for the Sea Turtles are not treated as jurisdictional in the strict sense, issue preclusion is not appropriate. Judge Finch obviously believed that the threshold reasons he had provided for denying relief on behalf of the Sea Turtles were dispositive, going so far as to caution that he would not do a full analysis as to the Sea Turtle claims. Virgin Islands Tree Boa, 918 F. Supp. at 892, n.23. This is hardly the sort of "firmness" in a judgment that justifies denying a party a chance to litigate the matter fully in a later action. Thus, Judge Brotman should have permitted plaintiffs a full opportunity to develop the factual elements of their claims brought on behalf of the Sea Turtles. The district court erred in not considering all of the evidence it had before it.
III.
For the foregoing reasons, I would allow the plaintiffs to proceed with their ESA claims brought on behalf of the Hawksbill and Green Sea Turtles. I, therefore, respectfully dissent.

 Subchapter C is inappropriately titled "Marine Mammals," given that it informs the reader of the notice requirement as it applies to sea turtles, which are not mammals.

 Far from dealing with pre-suit notice, § 222.23 identifies the species for which the NMFS can issue permits to authorize incidental takings for scientific purposes or for the enhancement of propagation or survival of the affected endangered species. See generally 50 C.F.R. § 222.23.

 This omission certainly was not an oversight since Judge Finch specifically discussed the adequacy of FEMA's consultation with respect to the Tree Boa. Virgin Islands Tree Boa, 918 F. Supp. at 902.