475 F.2d 1004
 In the Matter of MESA FARM COMPANY, a partnership composed
of James V. Pettitt and George W. Ross, Bankrupt
No. 110092, and Mesa Farms, Inc., a
California corporation,
Bankrupt No. 110091,
Appellants,
v.
UNITED STATES of America, Appellee.
 No. 71-1121.
 United States Court of Appeals,
Ninth Circuit.
 March 9, 1973.
 
 Henry Cohen (argued), Burlingame, Cal., for appellants.
 Anthony J. Steinmeiyer, Atty. (argued), Alan S. Rosenthal, Morton Hollander, Leonard Schaitman, Attys., L. Patrick Gray, III, Asst. Atty. Gen., Dept. of Justice, Washington, D. C., James L. Browning, Jr., U. S. Atty., San Francisco, Cal., for appellee.
 Before HAMLIN and TRASK, Circuit Judges, and SOLOMON, District Judge.*
 HAMLIN, Circuit Judge.
 
 
 1
 Mesa Farm Company and Mesa Farms, Inc., appeal from a denial by the United States District Court for the Northern District of California of a petition for review of the Referee in Bankruptcy's order directing them to pay an additional $22,200 into the Referees' Salary and Expense Fund (hereinafter Fund).
 
 
 2
 The sole issue presented is a question of first impression, to wit: whether the Judicial Conference of the United States validly promulgated a rule requiring that payment made to the Fund be based upon the fair market value of all assets coming into the bankrupt's estate, irrespective of whether such property is liquidated in the estate by the trustee. We uphold the rule's validity and affirm.
 
 
 3
 In June, 1968, Mesa Farm Company and Mesa Farms, Inc. each filed a petition for arrangement under Chapter XI of the Bankruptcy Act.[1] When no arrangement was consummated, both consented to an adjudication in bankruptcy.
 
 
 4
 The facts relevant to the instant proceeding were submitted to the District Court on an Agreed Statement of Facts:
 
 
 5
 "Prior to adjudication MESA FARMS COMPANY, a partnership, owned a fee-simple interest in that realty known as Mahoney Ranch, a leasehold interest in that realty known as Echenique Ranch, and operating agricultural machinery and equipment. MESA FARMS, INC., a corporation, conducted an agricultural business on said realty, using the machinery and equipment. MESA FARMS, INC. had no assets. None of said assets of MESA FARM COMPANY were liquidated in the Chapter XI Proceedings prior to adjudication.
 
 
 6
 "Subsequent to adjudication the leasehold on the Echenique Ranch was sold to the Echeniques free and clear of liens thereon for $225,000.00. There being more than $225,000.00 of liens on the leasehold, the proceeds were distributed to the lienors.
 
 
 7
 "During the pendency of the bankruptcy, Paul Masson, Inc. made an offer to the Trustee to purchase the Mahoney Ranch, subject to a first deed of trust, for a total price, including the amount of the first deed of trust, of $800,000.00. Also during the bankruptcy, Almaden Vineyards, Inc. approached JAMES V. PETTITT and GEORGE W. ROSS, the partners of MESA FARMS COMPANY to purchase the Mahoney Ranch for $850,000.00. After negotiations between the partners, their attorneys, and Almaden, it was ultimately agreed that the property should be sold free and clear of liens for the price of $1,050,000.00 cash, the amount being an approximation of that necessary to pay all creditors, secured and otherwise, of MESA FARMS COMPANY and MESA FARMS, INC., taxes, attorneys fees, costs and all expenses of administration. The sale would be made by the partnership to Almaden and was contingent upon dismissal of the bankruptcy proceedings prior to the conclusion of the sale. The machinery and equipment were appraised by an outside appraiser at $60,000.00 and were agreed to be sold by the partnership, contingent upon dismissal of the bankruptcy, to another corporation for $60,000.00 free and clear of liens in satisfaction of its claim against MESA FARM COMPANY on an unsecured loan, which with interest to May 31, 1969, amounted to $60,956.52.
 
 
 8
 "On June 6, 1969, a petition to approve the Masson sale and a petition to dismiss the bankruptcies came on simultaneously for hearing. Upon being advised at the hearing of the Almaden offer, representatives of Paul Masson, Inc. withdrew the Masson offer. The Referee approved the dismissal conditioned upon the court retaining jurisdiction to determine the amounts payable, if any, to the Referee's Salary and Expense Fund. Subsequent to the Order of Dismissal, also on June 6, 1969, a Contract of Sale for the Mahoney Ranch to Almaden was signed and escrow was closed less than a week thereafter. The machinery and equipment were thereafter transferred to the creditor corporation.
 
 
 9
 "The purchase price for the Mahoney Ranch was given to the attorneys for the bankrupt; they have paid all creditors in full except those whose claims are disputed, and some five creditors who have agreed to a reduction of their claims in the event that the moneys payable to the Referee's Salary and Expense Fund is such that all claims cannot be paid at one hundred cents on the dollar."
 
 
 10
 The dismissed bankrupts, appellants herein, paid into the Fund $4,750.00, the amount which would have been owed if the fees were based solely upon the $225,000.00 received from the Echenique Ranch leasehold. The referee held, however, that under a rule of the Judicial Conference of the United States, the payment to the Fund must be based upon $1,335,000.00, i.e., the fair market value of all assets coming into the hands of the trustee. Such assets included the $1,050,000.00 received for the Mahoney Ranch and the $60,000.00 received for the machinery and equipment subsequent to bankruptcy dismissal, in addition to the $225,000.00 received for the leasehold in the bankruptcy proceeding. Accordingly, the referee ordered appellants to pay an additional $22,200.00 into the Fund.
 
 
 11
 Appellants petitioned the District Court for review of the referee's order, contending that the Conference rule was invalid.[2] The petition was denied and this appeal followed.
 
 
 12
 Section 40c(2)(a) of the Bankruptcy Act, 11 U.S.C. Sec. 68(c)(2)(a), provides:
 
 
 13
 "(2) Additional fees for the referees' salary and expense fund shall be charged, in accordance with the schedule fixed by the conference (a) against each estate wholly or partially liquidated in a bankruptcy proceeding, and be computed upon the net proceeds realized * * * ." (emphasis added)
 
 
 14
 Section 40c(2)(c) provides in pertinent part:
 
 
 15
 "The Director [of the Administrative Office of the United States Courts], with the approval of the [Judicial C]onference, may make, and from time to time amend, rules and regulations prescribing methods for determining net proceeds realized in asset cases * * *."
 
 
 16
 The Judicial Conference promulgated the following rule with reference to determining "net proceeds realized":[3]
 
 
 17
 "Determination of net proceeds realized.
 
 
 18
 "In determining the amount of net proceeds realized in asset cases for the purpose of Section 40c(2) of the Bankruptcy Act as amended, the term 'net proceeds realized in asset cases' shall mean, in the case of sale or liquidation, the amount of money coming into the estate of the bankrupt as assets of such estate, which shall include the entire sale price of encumbered property when sold free and clear of all liens, or, if not sold or liquidated, the fair cash market value of all property coming into the estate as assets of such estate * * *."
 
 
 19
 Appellants contend that the Judicial Conference has exceeded its statutory authority as delegated in section 40c(2)(c) by defining "net proceeds realized" to include the fair market value of all property coming into the hands of the trustee in bankruptcy for the purposes of computing amounts due to the Fund, whether or not such property is liquidated in the estate by the trustee.
 
 
 20
 They urge that the phrase "net proceeds realized" necessarily imports a concept of the result of the sale or liquidation efforts. Specifically, appellants claim "net proceeds realized" refer to those proceeds realized by the trustee only as a result of a liquidation of assets in the bankruptcy proceedings.[4]
 
 
 21
 In Udall v. Tallman, 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1965), the Supreme Court enunciated the standard of review that courts must employ when faced with problems of statutory construction:[5]
 
 
 22
 "[T]his Court shows great deference to the interpretation given the statute by the officers or agency charged with its administration. 'To sustain the Commission's application of this statutory term, we need not find that its construction is the only reasonable one, or even that it is the result we would have reached had the question arisen in the first instance in judicial proceedings.' Unemployment Comm'n v. Aragon, 329 U.S. 143, 153 [67 S.Ct. 245, 250, 91 L.Ed. 136]. See also, e.g., Gray v. Powell, 314 U.S. 402 [62 S.Ct. 326, 86 L.Ed. 301]; Universal Battery Co. v. United States, 281 U.S. 580, 583 [50 S.Ct. 422, 74 L.Ed. 1051]. 'Particularly is this respect due when the administrative practice at stake "involves a contemporaneous construction of a statute by the men charged with the responsibility of setting its machinery in motion; of making the parts work efficiently and smoothly while they are yet untried and new."' Power Reactor Co., v. Electricians, 367 U.S. 396, 408, 81 S.Ct. 1529, 6 L.Ed.2d 924."
 
 
 23
 The present section 40c of the Bankruptcy Act originated in the Referees' Salary Act of 1946, 60 Stat. 323, which placed referees on a salary basis and abolished the theretofore practice whereby referees derived compensation directly from fees imposed on their cases. See generally, 2 Collier on Bankruptcy Sec. 40.01 (1971). The 1946 Act also created two trust funds to be used to pay referees' salaries and expenses.[6] The trust funds were supported by "a simplified system based upon two essential levies: (1) a fixed filing fee [Section 40c(1)] and (2) an additional fixed charge in asset, arrangement, and wage earner cases according to the size of the estate. [Section 40c(2)]." H.R.Rep.No. 1037, 79th Cong., 1st Sess. 5 (1945); S.Rep.No. 959, 79th Cong., 2d Sess. 6 (1946). The 1946 Act "sought to make the system self-sustaining and paid for by those who use it * * *." United States v. Kras, 409 U.S. 434, at 448, 93 S.Ct. 631 at 639, 34 L.Ed.2d 626 (1973).
 
 
 24
 Pursuant to the terms of section 40c(2), the Judicial Conference promulgated rules and regulations prescribing the methods for determining, inter alia, "net proceeds realized in asset cases." The Conference's construction of that phrase to include all property coming into the estate, supra, is herein challenged.
 
 
 25
 The rule is the contemporaneous construction of section 40c(2) by those charged with administering the referee salary and expense system, supra. As such, the Conference rule is entitled to great deference. Udall v. Tallman, supra. "[T]heir construction should be given effect unless plainly unreasonable or in conflict with the plain intent of the legislature." Brotherhood of Railroad Trainmen v. Akron & B. B. R. Co., 128 U.S.App.D.C. 59, 385 F.2d 581, 612 (D.C.Cir. 1967), cert. den. 390 U.S. 923, 88 S.Ct. 851, 19 L.Ed.2d 983 (1968).
 
 
 26
 The propriety of the challenged rule is buttressed by the fact that it appears consistent with congressional intent. Congress contemplated that the fee paid into the Fund would be assessed "according to the size of the estate," in support of a self-sustaining system. H.R.Rep.No. 1037, supra, at 5-6, S.Rep.No. 959, supra, at 6; United States v. Kras, supra. The cash proceeds received from a partial liquidation of an estate are not necessarily related to the estate's size. In the instant case, an estate valued at over $1,335,000.00 produced only $225,000.00 cash. In light of the foregoing, the Conference rule interpreting "net proceeds realized" to include all assets coming into the estate is justifiable.
 
 
 27
 Furthermore, the Conference rule effectively negates the possibility of a bankrupt's estate being negotiated so as to avoid payment to the Fund after lengthy pendency of bankruptcy proceedings.[7]
 
 
 28
 In sum, there appear to be rational bases for the Conference definition of "net proceeds realized."[8] Certainly, we can find no abuse of its broad Udall discretion.
 
 
 29
 Accordingly, the District Court's order denying the appellants' petition for review is affirmed.
 
 
 
 *
 The Honorable Gus J. Solomon, Senior Judge, United States District Court, Portland, Oregon
 
 
 [1]
 11 U.S.C. Secs. 701-799
 
 
 [2]
 Appellants challenge only the rule's validity, and not its application to the facts of this case
 
 
 [3]
 Conference Report, May 2, 1947, pp. 41-42
 
 
 [4]
 Appellants cite several judicial definitions supportive of their restrictive interpretation of the term "proceeds." The Government has been equally astute in noting judicial definitions supportive of their broader interpretation of the term
 We can only conclude that the term "proceeds" is "a word of great generality." Phelps v. Harris, 101 U.S. 370, 380, 25 L.Ed. 855 (1879).
 
 
 [5]
 Appellants' contention that the Udall standard is inapplicable to the Judicial Conference, on the premise that it is not a regulatory agency, is contradicted by the case law. See American Guaranty Corp. v. United States, 401 F.2d 1004, 185 Ct.Cl. 502 (1968)
 
 
 [6]
 The two funds were combined in 1959 to form the present day Referees' Salary and Expense Fund. 73 Stat. 259
 
 
 [7]
 The "Agreed Statement of Facts" contains no reference to the motives of either appellants or Almaden in their consummation of the Mahoney Ranch sale
 
 
 [8]
 Indeed, the leading bankruptcy commentators, 2 Collier on Bankruptcy p 40.05 [2.5] (1971) and 6 Remington, Bankruptcy Law Sec. 2729 (1952), and several courts, In re Street, 184 F.2d 710 (3rd Cir. 1950); Reconstruction Finance Corp. v. Cohen, 179 F.2d 773 (10th Cir. 1950) and In re Stephen R. Jackson and Co., 82 F.Supp. 966 (D.Del.1949), have relied upon the challenged rule without questioning its propriety. Cf., In re La Rowe, 91 F.Supp. 52 (D.Minn.1950)