**In the Matter of NICKERSON & NICKERSON, INC.**

**UNITED STATES of America, Appellant,**

v.

**NICKERSON & NICKERSON, INC., Appellee.**

No. 75–1129.

United States Court of Appeals, Eighth Circuit.

Submitted Oct. 16, 1975.

Decided March 2, 1976.

Allen H. Sachsel, Atty., App. Section, Civ. Div., Dept. of Justice, Washington, D. C., for appellant; Irving Jaffe, Acting Asst. Atty. Gen., Rex E. Lee, Asst. Atty. Gen., William K. Schaphorst, U. S. Atty., and Leonard Schaitman, Atty., Appellate Section, Washington, D. C., on brief.

Thomas F. Flaherty, Omaha, Neb., for appellee; Paul F. Festersen, Monen, Seidler & Festersen, Omaha, Neb., on brief.

Before HEANEY, BRIGHT and WEBSTER, Circuit Judges.

WEBSTER, Circuit Judge.

In this appeal, we examine the statutory procedure for financing the Referees' Salary and Expense Fund in arrangement proceedings under Chapter XI of the Bankruptcy Act, 11 U.S.C. §§ 701–99.

The United States appeals from a judgment of the District Court holding that, under Section 40(c)(2)(b) of the Act,[1] fees for the Fund should be computed only upon amounts to be paid to the general unsecured creditors and not also upon unsecured claims having tax priority. The government contends that the statute requires that payments to *all* unsecured creditors be used as a basis for computing the fee. We agree and reverse the judgment of the District Court.

■ The controversy here arose out of Chapter XI arrangement proceedings involving Nickerson & Nickerson, Inc., the debtor. Nickerson operated over fifty retail stores in fifteen states at various places along the interstate highway system selling novelty items, food, and gasoline. The federal government and various counties, municipalities, and taxing subdivisions of the several states filed sixty-three priority tax claims totalling $364,569.08.[2] If the government's posi-

---

1. 11 U.S.C. § 68(c)(2)(b).

2. These tax claims are afforded priority by Section 64(a)(4) of the Bankruptcy Act, 11 U.S.C. § 104(a)(4). They are based on a wide range of taxes, including income taxes, social security and unemployment taxes, sales and use taxes, corporate franchise taxes, and real and personal property taxes. A priority claim is one whose status under state or federal law entitles the creditor to be paid from general assets ahead of general unsecured creditors. A secured claim, on the other hand, reflects a security interest in specific assets which entitles the secured creditor to have his claim

tion is adopted, the Fund would receive an additional sum of approximately $1,800 by including these tax claims in the base for computing the fee.

Prior to 1947, federal referees in bankruptcy were compensated through fees charged in individual cases. In 1947, this practice was superseded by (1) placing the referees on salary and (2) providing for two funds with which to pay the salaries and administrative expenses, respectively. These funds were combined into a single Referees' Salary and Expense Fund in 1959. Section 40(c)(2) of the Bankruptcy Act now provides:

> Additional fees for the referees' salary and expense fund shall be charged, in accordance with the schedule fixed by the conference * * * (b) against each case in an arrangement confirmed under chapter 11 of this title, and be computed upon the amount to be paid to the unsecured creditors upon confirmation of the arrangement and thereafter, pursuant to the terms of the arrangement, and where under the arrangement any part of the consideration to be distributed is other than money, upon the amount of the fair value of such consideration; * * *

The referee first found the language of Section 40(c)(2)(b) to be ambiguous since it is not clear whether the phrase "pursuant to the terms of the arrangement" refers to payments to be paid to creditors "upon confirmation of the arrangement" or to payments made "thereafter".[3] The referee reasoned that this ambiguity should be resolved in favor of the debtor, since excluding priority claims from the fee base would result in reducing the expenses incurred by the debtor and thus would foster the rehabilitative purposes of the Act. The referee further reasoned that payments to a pri-

ority creditor who was also a secured creditor would be excluded from the fee base; requiring the debtor to litigate over doubtful secured claims for no purpose other than to determine the exact amount of the fee base would be an unwarranted expense. It was the latter argument which the District Court, upon review, found persuasive.

The District Court, in affirming the decision of the referee, gave controlling weight to the rehabilitative purposes of Chapter XI proceedings and held that unsecured claims with priority were to be excluded from the computation of the fee. The District Court stated that the debtor's expenses would be greater if the government's position were accepted since the debtor would be required to incur research and litigation expenses in determining whether a tax claim had secured status and thus whether to include it in the basis for computing the fee. It held that the rehabilitative purposes of Chapter XI would be defeated by requiring the debtor to bear the expense of litigation or the risk of nonlitigation.

The purpose of the 1946 Amendment was stated by the Supreme Court in *United States v. Kras*, 409 U.S. 434, 447–48, 93 S.Ct. 631, 639, 34 L.Ed.2d 626, 637 (1973):

> By the 1946 Amendment * * *, Congress * * * abolished the theretofore existing practices of the pauper petition and of compensating the referee from the fees he collected. It replaced that system with one for salaried referees and for fixed fees for every petition filed and a specified percentage of distributable assets. It sought to make the system self-sustaining and paid for by those who use it rather than by tax revenues drawn from the public at large. H.R.Rep.No. 1037, 79th Cong., 1st Sess., 4–6 (1945);

---

satisfied, pro tanto, from such assets. A secured creditor may also have priority and, under appropriate circumstances, may choose not to assert its secured status and rely upon its right of priority in an arrangement proceeding.

**3.** The distinction assumes importance because a priority creditor cannot be affected by a

Chapter XI arrangement without his consent. *See* 11 U.S.C. § 767(2); 8 J. Moore, Collier on Bankruptcy ¶ 5.33[1] (14th ed. 1975). Thus a payment to a priority creditor would not *per se* be made pursuant to an arrangement, and therefore such payments arguably would not form part of the base for computation of the fee charge.

S.Rep.No.959, 79th Cong., 2d Sess. 2, 5–6 (1946).[4]

■■ In a Chapter XI proceeding, no services are performed on behalf of secured creditors since their security rights are unaffected. *See* 9 J. Moore, Collier on Bankruptcy ¶ 8.01[3] (14th ed. 1975). It is appropriate therefore that the fees for referees' salaries and administration expenses not be based upon assets subject to such security interests. Priority unsecured claims, however, present a different situation. The money or other assets from which such claimants will be paid must come into the custody of the court or its agent and be handled by it in the administration of the arrangement in the same manner as non-priority unsecured assets. *See* 11 U.S.C. § 767(2); 9 Collier on Bankruptcy, *supra*, ¶ 9.26. The fact that some claims, because of state or federal preference policies, are to be paid before non-priority claims does not alter the administrative effort required to implement the plan of arrangement. *See In re Golden Crust Bakery*, No. 67993–C (N.D.Cal. June 16, 1970) (Referee Cowans) slip op. at 5–6, *petition for review denied*, Dec. 11, 1970. We see no basis for an interpretation of Section 40(c)(2)(b) which would permit one debtor with substantial priority claims outstanding to incur less cost than another debtor whose creditors, although equal in number and amount, did not possess priority claims. Nickerson has received a windfall to which it is not entitled. Section 40(c)(2)(b) makes no distinction between priority and non-priority unsecured claims and no purpose of this statute is served by injecting an implied distinction.[5]

■ It is of course desirable that a debtor be enabled to make a fresh start after the debtor has utilized the provisions of the Bankruptcy Act, and the courts will protect the debtor from interpretations which unfairly impinge upon that objective. *See, e. g., Lines v. Frederick*, 400 U.S. 18, 19, 91 S.Ct. 113, 27 L.Ed.2d 124, 126 (1970); *Local Loan Co. v. Hunt*, 292 U.S. 234, 244–45, 54 S.Ct. 695, 699, 78 L.Ed. 1230, 1235 (1934). On the other hand, that objective cannot be extended to achieve a result neither commanded by the statute nor consistent with its purpose. *See Kokoszka v. Belford*, 417 U.S. 642, 646, 94 S.Ct. 2431, 2436, 41 L.Ed.2d 374, 379 (1974).

■ The District Court expressed concern that a debtor would, under the government's construction of the statute, be put to needless expense in litigating the secured status of priority claims, even though there might be adequate funds to pay both secured and unsecured priority claims, simply to determine the fee base. This concern is unfounded. A debtor is required to reflect claims as secured or unsecured when it files its schedules. *See* Bankruptcy Rule 11–11; Official Bankruptcy Form 6. It is incumbent upon an interested party to challenge that classification. If it is apparent that there are funds sufficient to satisfy the claims of an unsecured priority creditor, such a creditor may wish to

---

**4.** Each case will bear part of the cost and the asset cases, which generally require the most attention, will pay a larger share.

H.R.Rep.No.1037, 79th Cong., 1st Sess. 5–6 (1945).

**5.** The Judicial Conference of the United States is charged by law with responsibility for establishing the *rates* of fees necessary to maintain the fund. *See* 11 U.S.C. § 68(c)(2). The Administrative Office of the United States Courts has promulgated a "Manual for Bankruptcy Judges: Administrative Procedures and Regulations" where it discusses Bankruptcy Form BK–78, in which the referee reports all cases successfully terminated under Chapter XI. In reporting under item 7(c) the "[t]otal amount of consideration paid and to be paid, under the plan of arrangement, to unsecured creditors",

the referee is advised that 7(c) is the total amount to be paid to all priority unsecured creditors and all general unsecured creditors, and that "[t]he total entered at item 7(c) is the amount upon which the charge for the Referees' Salary and Expense Fund should be computed." This interpretation is also spelled out in a note on Form BK–78 itself. Thus, the rates established by the Judicial Conference are based upon this interpretation. While this interpretation does not bind us, the views of the Conference are entitled to great deference unless plainly unreasonable or in conflict with the plain intent of Congress. *In re Mesa Farm Co.*, 475 F.2d 1004, 1007–08 (9th Cir. 1973); *American Guaranty Corp. v. United States*, 401 F.2d 1004, 1007, 185 Ct.Cl. 502 (1968).

participate in the plan of arrangement by not asserting any additional status as a secured creditor which he might have. Likewise it seems needlessly speculative to assume that a debtor will choose to assert secured status for any of its priority creditors simply to avoid the expense of administration calculated in part upon such priority claims. We therefore hold that Section 40(c)(2)(b) requires that fees be assessed upon amounts to be paid to unsecured creditors, whether or not any of such unsecured creditors are entitled to priority status.

The judgment of the District Court is reversed and remanded for further proceedings consistent with this opinion.

Webster, Circuit Judge, dissented and filed opinion.