**In re BUENA PARK DEVELOPMENT CORPORATION, Debtor.**

**Bankruptcy No. 78–7415.**
**No. CV 81–5349–DWW.**

United States District Court,
C. D. California.

April 29, 1982.

**216**

Stephen S. Trott, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Chief, Civ. Div., Carolyn M. Reynolds, Asst. U. S. Atty., Los Angeles, Cal., for appellant.

Theodore B. Stolman and Robin L. Riblet, of Stutman, Treister & Glatt, Professional Corp., Los Angeles, Cal., for appellee.

## ORDER REVERSING BANKRUPTCY COURT AND REINSTATING FEES UNDER BOTH § 40(c)(2)(A) and § 40(c)(2)(B) OF THE BANKRUPTCY ACT

DAVID W. WILLIAMS, Senior District Judge.

This appeal arises out of a petition of Bankruptcy filed by Buena Park Development Corporation on August 15, 1978. In the initial Chapter ("Ch.") 11 proceeding about $400,000 in cash was accumulated. The action was then converted to a Ch. 7 proceeding, the $400,000 was deposited with the Ch. 7 trustee, and an additional $200,000 was realized during the Ch. 7 proceeding from the sale of Ch. 11 receivables and certain other assets that had pre-existed the original petition, among them the debtor's "Holiday Inn of Buena Park." Also, the Ch. 7 trustee realized a net amount from his two-week operation of the debtor's hotel. In addition, all other property owned or held by the debtor passed to the Ch. 7 trustee upon the conversion.

The conversion came about because the debtor had not complied with the Bankruptcy Court's order directing debtor to file a plan of arrangement by May 31, 1980. The conversion entitled the trustee to sell the debtor's assets, with Court approval. When they applied for an order adjudicating the debtor a bankrupt for failure to file a plan of arrangement, the creditors had also sought an order appointing a trustee and authorizing him to sell the debtor's hotel to the Builders Investment Group ("BIG"). (Application of June 10, 1980) ("Application"). The court below did authorize the sale, which was later consummated. BIG was itself a creditor and the terms of the sale adjusted BIG's rights as a creditor in relation to the rights of other creditors. (Application at 4). Apparently the main asset sold to BIG, the Holiday Inn of Buena Park, had been debtor's chief operating asset.

On July 22, 1980, the debtor filed its "Ch. 11 Petition in Pending Bankruptcy Case", thus reconverting the Ch. 7 proceeding to a

Ch. 11 proceeding. On March 19, 1981, the Bankruptcy Court entered its Order confirming the debtor's "Third Amended Plan of Arrangement as Modified," pursuant to which all unsecured creditors (including BIG) were paid in full.

Later, on June 3, 1981, the Bankruptcy Court entered its Order setting the fees of the trustee and various counsel, and fixing the amount of the estate's obligation to the Referee's Salary and Expense Fund ("the Fund"). The assessment against the estate for the fund was fixed at $21,689.52, consisting of: $14,804.03 computed pursuant to § 40(c)(2)(a) of the Act ("a"), $6,594.24 computed in accordance with § 40(c)(2)(b) of the Act ("b"), and special charges of $291.25.

The debtor requested reconsideration of the Court's Order fixing the estate's obligation to the Fund, on the ground that the Order imposed an improper double charge against the estate. The United States then intervened and filed its brief in support of the Bankruptcy Court's Order of June 3, 1981. On September 23, 1981, following a hearing on the debtor's request for reconsideration, Judge Elliot entered his "Order Granting Reconsideration and Order Reducing Salary and Expense Fund," pursuant to which he reduced the estate's obligation to the Fund by $14,804.03, the (a) charge.

The United States appeals from the Bankruptcy Court's Order of September 23, 1981, and urges reinstatement of that Court's original Order of June 3, 1981.

The issue is whether, in a Ch. 11 case converted into a Ch. 7 proceeding and later reconverted into a Ch. 11 case in which a plan of arrangement is confirmed, the basis for computing the estate's obligation to the Fund is solely § 40(c)(2)(b), or is it §§ 40(c)(2)(a) and (b).

Appellant contends that imposition of fees under both sections was proper because the estate benefited from both Ch. 7 and Ch. 11 proceedings. Section 40(c)(2) provides:

> Additional fees for the referees' salary and expense fund shall be charged, in accordance with the schedule fixed by the conference (a) against every estate wholly or partially liquidated in a bankruptcy proceeding, and be computed upon the net proceeds realized;
>
> (b) against each case in an arrangement confirmed under Chapter 11 of this title, and be computed upon the amount to be paid to the unsecured creditors upon confirmation of the arrangement and thereafter, pursuant to the terms of the arrangement, and where under the arrangement any part of the consideration to be distributed is other than money, upon the fair market value of such consideration; and (c). . . ."

Because there is no language that states, or can be interpreted, to the effect that the fees are mutually exclusive, appellant argues that fees should be assessed under both sections. More specifically, it notes that a partial liquidation took place by virtue of the Ch. 7 trustee's receipt of $400,000 in funds accumulated during the original Ch. 11 proceeding, and his realization of $200,000 from the sale of Ch. 7 receivables and of a net amount from his two-week operation of appellee's hotel. These amounts were subject to the § 40(c)(2)(a) levy because they were "net proceeds realized" within the terms of that provision.[1] *Mesa Farm Company v. United States*, 475 F.2d 1004 (9th Cir. 1973) held that the Congressional intent required that the fee paid into the fund be assessed in accordance with the size of the § 40(c)(2)(a) estate, 475 F.2d at 1007–08; therefore, the Fund will be shortchanged if only the less substantial § 40(c)(2)(b) levy is assessed where, as here, the estate benefits from a Ch. 7 proceeding before the case is concluded in a Ch. 11 arrangement. Thus, appellant argues, the fees originally imposed should be reinstated.

---

1. "Net proceeds realized" are, "in the case of sale or liquidation, the amount coming into the estate . . . which shall include the entire sale price of encumbered property . . . , or, if not sold or liquidated, the fair market cash value of all property coming into the estate as assets of the estate. . . ." 1966 Reports of the Proceedings of the Judicial Conference of the United States, p. 22.

Appellee argues that the existence of net proceeds is irrelevant, because the issue is not the formula to be used in computing a charge under § 40(c)(2)(a), but rather whether any charge whatsoever is due under that section. Further, it states, *Mesa Farm Co., supra*, merely established that in a liquidation case the computation for determining an estate's obligation to the Fund is based upon "net proceeds realized", as defined by the Judicial Conference of the United States.

Appellee also argues that the Bankruptcy Act consistently avoids the imposition of duplicative charges. It contends that in a proceeding such as this, the determination of the estate's proper contribution to the Fund is analogous to the determination of the appropriate amount of the trustee's fee. The measure of the trustee's fee in such situation is specifically addressed by Bankruptcy Act § 48(f), former 11 U.S.C. 76(f), which provides that the trustee shall receive the statutory percentage computed upon "all moneys disbursed . . . by him to any persons including lienholders, upon all moneys to be paid to unsecured creditors upon the confirmation of the arrangement, . . . [etc.]."

The appellee contends that the trustee in a superseded bankruptcy case is not allowed to collect those fees and then charge the estate a further fee pursuant to section 48(c), computed upon all moneys disbursed in the superseded bankruptcy. It therefore concludes that in a Ch. 11 case involving a confirmed plan which supersedes a bankruptcy case, only § 40(c)(2)(b) provides a basis for assessing fees for the Fund.

In an analogous context, appellee notes, a District Court held that only one of two related estates need contribute to the Fund in an arrangement case, since joint unsecured creditors of both estates were actually paid from only one of the estates. *In re Sonnenschein*, 299 F.Supp. 570 (S.D.N.Y. 1969) (partnership and affiliated corporation were jointly liable for all debts, but only corporation's estate would actually pay creditors).

Further, because Bankruptcy Rule 11–4 deems a case commenced under another Chapter of the Act to have commenced under Chapter 11 when the case ultimately proceeds under Ch. 11, appellee argues that this entire action should be deemed a Ch. 11 proceeding and only the (b) fee should be assessed.

Finally, appellee argues that were this a Ch. 10 case supervening a bankruptcy, there would be no question but that the basis for computing the debtor's Fund charge would not be controlled by § 40 of the Act and that the standard governing case proceeding under multiple chapters is one of reasonable compensation. Bankruptcy Act § 245, former 11 U.S.C. § 645; *see also* Act § 494, former 11 U.S.C. § 894 (as to charges imposed in supervening Ch. 12 cases).

It is the Court's opinion that fees should be assessed under both sections and hence that the fees originally ordered by the Bankruptcy Court should be reinstated. Since the statute's use of a semi-colon between the two sections and "and" following § 40(c)(2)(b) makes the two charging provisions conjunctive and independent rather than disjunctive, they are not to be construed as alternatives. *Azure v. Morton*, 514 F.2d 897, 900 (9th Cir. 1975). Therefore, the statute allows the collection of fees under both sections where, as here, both by their terms are applicable.

Courts have some freedom to adopt a restricted rather than the ordinary meaning of statutory words where literalness would lead to absurd results or thwart the statutory purpose, but otherwise the literal statutory meaning governs. *In re Trans Alaska Pipeline Rate Cases*, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591, 56 L.Ed.2d 591, 601 (1978). Absent compelling reason to do so, a court may not countermand the literal language of a legislative directive. *Michigan Welfare Rights Organization v. Dempsey*, 462 F.Supp. 227, 234 (D.Mich. 1978). The burden of showing that the statute is not to be read as intending what it says on its face is on the party seeking departure from the literal language. *C.I.R.*

*v. Barclay Jewelery*, 367 F.2d 193, 196 (1st Cir. 1966).

The statute seems to require a double assessment here, and the debtor's arguments do not meet its burden of showing a contrary intent. The clearest expression of legislative intent is that "each case will bear part of the cost and the asset cases, which generally require the most attention, will pay a larger proportionate share." H.R.Rep.No. 1037, 79th Cong., 1st Sess., 1945. Here there were both asset and arrangement proceedings, and both required administrative services.

Additional support for assessing fees under both provisions comes from *Mesa Farms, supra.* It involved the imposition of an (a) charge against the estate of a bankrupt which sought to dismiss its bankruptcy case and then sell assets, thereby availing itself of bankruptcy's procedural protections while avoiding the charge. 415 F.2d at 1005–06 and 1008. The present case is analogous because the debtor availed himself of two chapters by filing under Ch. 11, then neglecting to propose an acceptable arrangement and thereby permitting the involuntary conversion to Ch. 7. Concededly, it is unclear precisely what, if any, benefit appellee attained by permitting the conversion and reconversion of its case. *Mesa Farms* did not suggest, however, that the (a) fee should be assessed only on that portion of the net proceeds which benefited from the Ch. 7 proceedings, nor did it suggest that fees could be assessed only under either of (a) or (b). Rather, the case endorsed the assessment of the (a) fee upon all assets coming into the estate whenever a partial liquidation takes place. Since a partial liquidation took place in the present case, the (a) fee is appropriate here despite the conversion, just as it was appropriate in *Mesa Farms* despite the dismissal.

*Mesa Farms* also supports imposition of the (b) fee, because it reasoned that where the fee provisions can be construed literally to apply, they should be applied to prevent the debtor from escaping any portion of the fees that could be assessed.

One consideration that the debtor has urged upon the Court is the existence of a policy against duplicative fee charges in proceedings under the Act. Debtor has relied upon the Ch. 10 reorganization provisions to infer the existence of such a policy, and the basic principle there is that only one fee should be awarded for a particular service, regardless of the number of persons who perform it. *In re R. Hoe & Co., Inc.*, 471 F.Supp. 493, 503 (S.D.N.Y.1978), *citing Finn v. Childs*, 181 F.2d 431, 436 (2d Cir. 1950). Thus, for example, when three separate claimants in a reorganization proceeding performed exactly the same service, the estate was not required to pay for the same service three times; rather, a fair division of the fee for the service was proper. *In re Food Town, Inc.*, 208 F.Supp. 139, 146–47 (D.Md.1962). Here the passage of the estate through two different chapters required the use of two different kinds of judicial administration, liquidation and arrangement. Hence, the imposition of fees under both the (a) and (b) provisions would not seem to constitute a double charge, within the meaning of that concept as developed in the above cases. *See also, U.S.A. Motel Corp. v. Danning*, 521 F.2d 117, 119 (9th Cir. 1975) (since services undertaken on behalf of an estate benefit it, the attorneys, trustee, and referee/special master are to receive statutory fees, even where the petition is dismissed because the debtor lacked good faith).

Finally, closest to point, is *In re Nickerson & Nickerson, Inc.*, 530 F.2d 811 (8th Cir. 1976), a Ch. 11 proceeding. It noted first that money or other assets from which priority unsecured claims will be paid come into court custody and must be handled in the same manner as nonpriority unsecured assets. Therefore, it held that fees for the Fund must be assessed on amounts to be paid to unsecured creditors whether or not their claims have priority status, though a priority creditor cannot be affected by a Ch. 11 arrangement without his consent. 530 F.2d at 813–15 & n. 3. Thus, though a priority creditor might wish to have no part in the Ch. 11 proceeding, he is liable for the portion of the fees attributable to his

claims. *See Id.* Thus, there is authority for holding that fees which are required merely because an estate is administered under a given Chapter, such as the § 40 fees, will be imposed regardless of whether a particular party is benefited by the proceedings under that Chapter. That makes an assessment of fees under both the (a) and (b) provisions appropriate here.[2]

■ Debtor's further argument, that trustees are not permitted to collect fees in two proceedings of the same case and neither should the Fund, has some intuitive appeal. However, it is wide of the mark because the debtor shows no logical or practical relationship between the *compensation* for particular trustees, which is based on the particular work each individual trustee does, and the *system* for funding compensation for referees, which operates on a totally different financial basis.

■ Debtor's only other argument of any apparent merit is that the three proceedings should be deemed one Ch. 11 proceeding because Rule 11 deems a Ch. 11 proceeding to have commenced upon the filing of an earlier petition under another Chapter. The difficulty with this argument is that the case was commenced under Ch. 11, not Ch. 7. The Rule by its terms does not deem the Ch. 7 phase of the proceedings to be a Ch. 11 action where, as here, the Ch. 7 proceeding was not the initial proceeding.

Therefore, the Order of the Bankruptcy Court must be reversed and the original fees reinstated.

SO ORDERED.

---

**2.** The case appellee cites in this regard, *In re Sonnenschein*, is not apposite because one of the two related estates therein apparently had no assets to be charged. Thus, the *Sonnen-* *schein* Court's ruling that fees should be assessed against only one of the estates does not apply here, where a single estate's assets were administered in two different proceedings.