In the Matter of **PITTSBURGH RAIL-WAYS COMPANY, Debtor,**
United States of America,
Appellant.
No. 12322.

United States Court of Appeals
Third Circuit.
Argued Jan. 7, 1958.

Decided March 25, 1958.

Thomas N. Chambers, Washington, D. C., (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Meyer Rothwacks, Attorneys, Department of Justice, Washington, D. C., D. Malcolm Anderson, U. S. Atty., Pittsburgh, Pa., on the brief), for appellant.

Samuel L. Fuss, Pittsburgh, Pa., for debtor.

Before MARIS, McLAUGHLIN and STALEY, Circuit Judges.

McLAUGHLIN, Circuit Judge.

A voluntary petition for corporate reorganization of the Pittsburgh Railways System was presented on May 10, 1938. The United States thereafter filed claims for various taxes and interest payments. Ultimately the Treasury accepted the trustee's offer of settlement under authority of § 199 of the Bankruptcy Act, 11 U.S.C.A. § 599 (1952) [1] and payment

1. § 199, 11 U.S.C.A. § 599:
  " * * * If, in any proceeding under this chapter, the United States is a secured or unsecured creditor on claims for taxes * * * no plan which does not provide for the payment thereof shall be confirmed by the judge except upon the acceptance of a lesser amount by the Secretary of the Treasury certified to the court * * *."

was made upon court authorization of December 5, 1950.

The terms of the settlement and the authorization order included a provision that interest would be paid on the various amounts, constituting the aggregate of the settlement, from their due date to the date of payment.

In City of New York v. Saper, 1949, 336 U.S. 328, 69 S.Ct. 554, 93 L.Ed. 710, the Supreme Court had decided that in an ordinary bankruptcy proceeding the city was not entitled to interest from the date the bankruptcy proceeding was initiated to the date of payment of the taxes owed prior to initiation of the bankruptcy proceeding. The Fourth Circuit, after the agreement between the Treasury and the trustee above described had been consummated, found the reasoning of the Saper case applicable also to a Chapter X reorganization proceeding. United States v. Edens, 4 Cir., 1951, 189 F.2d 876, affirmed per curiam 1952, 342 U.S. 912, 72 S.Ct. 357, 96 L.Ed. 682.

Consequently the reorganization trustee of Pittsburgh Railways filed claims for refund of the post-reorganization interest paid in accordance with the terms of the settlement; when these were not acted upon, he petitioned the bankruptcy court for such refund, alleging jurisdiction under § 57, sub. k of the Bankruptcy Act, as amended, 11 U.S.C.A. § 93, sub. k.[2] The trustee maintained that the part of the settlement agreement permitting the post-reorganization interest to be paid had been entered into upon a mistaken assumption as to the law governing such interest and that the Edens case had demonstrated the error of the assumption. The United States moved to dismiss the petition. The district court, however, denied the motion and entered an order with opinion, D.C.W.D.Pa.1957, 150 F.Supp. 634 directing a refund of $100,609.92. That judgment is here appealed.

■■ The first question with which the court is presented is whether the district court had jurisdiction as a bankruptcy court to determine the trustee's claim for what amounts to a refund. In maintaining that the court was without jurisdiction the government asserts first that since there is no statutory consent by the sovereign to permitting a claim for refund to be entertained in a bankruptcy court, the trustee should have been required to bring a separate action under 28 U.S.C. § 1346. As a corollary of this argument the government declares that since the funds are in its possession as a result of a court-approved settlement, it holds the property adversely to the estate of the debtor, and the only remedy is therefore the separate action, citing In re Brokol Mfg. Co., 3 Cir., 1955, 221 F.2d 640. But this whole line of argument slides over the fact that unperfected tax liens, and a fortiori tax claims, of an estate in a reorganization proceeding are, by §§ 196 and 199[3] of the Bankruptcy Act submitted to the jurisdiction of the bankruptcy court. It was only after submission of the government's claims from which the interest here in controversy accrued that the compromise settlement was approved and the government was paid. In re Brokol Mfg. Co., supra, is fundamentally distinguishable from the question now presented, inasmuch as the property there involved had been taken into government

---

2. § 57, sub. k, 11 U.S.C.A. § 93, sub. k:
   "Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, before but not after the estate has been closed."

3. § 196, 11 U.S.C.A. § 596:
   "After the approval of the petition the judge shall prescribe the manner in which and fix a time within which the proofs of claim of creditors and of the interests of stockholders may be filed.

and allowed. Objections by any party in interest to the allowance of any such claims or interests shall be heard and summarily determined by the court."
   § 199, 11 U.S.C.A. § 599:
   "If the United States is a secured or unsecured creditor or stockholder of a debtor, the claims or stock thereof shall be deemed to be affected by a plan under this chapter * * *." The section goes on in relevant part as quoted in Footnote 1, supra.

possession before the filing of the petition in bankruptcy. The property there had never been amenable to the jurisdiction of the Bankruptcy Court and to make it so, the trustee had to bring a separate plenary action. Where assets of the bankrupt and where claims of creditors have been under the jurisdiction of the bankruptcy court, the import of § 57, subsections k[4] and l[5] is that the court's jurisdiction may be asserted any time until the closing of the estate. In re Plankinton Bldg. Co., D.C.E.D.Wis.1942, 46 F.Supp. 697, reversed on other grounds, 7 Cir., 1945, 135 F.2d 273. Unless, therefore, there is a compelling argument why § 57, subsections k and l should not be applied to tax claims in a reorganization proceeding, the court below had jurisdiction.

The Second Circuit in National City Bank of New York v. O'Connell, 2 Cir., 1946, 155 F.2d 329, pointed out that § 102 of the Bankruptcy Act, 11 U.S.C.A. § 502 makes the provision of the first seven chapters dealing with ordinary bankruptcy proceedings applicable to reorganization proceedings so long as they are " * * * not inconsistent or in conflict with the provisions * * *" for such proceedings; the section goes on to enumerate certain sections of the first seven chapters that are not ordinarily to be applied in reorganization proceedings. Subsections k and l of § 57 are not among them. § 2, sub. a (2), 11 U.S. C.A. § 11, which also is not specifically made inapplicable in reorganization proceedings invests the bankruptcy court with power to " * * * reconsider allowed or disallowed claims * * *."

Section 64 of the Bankruptcy Act, 11 U.S.C.A. § 104 [6] is made expressly inapplicable to reorganization proceedings, but it seems clear that that inapplicability is attributable to the expression of priorities contained in § 64 and was never intended to deprive a bankruptcy court of power to pass on tax claims presented against an estate undergoing reorganization. See In re 168 Adams Building Corp., 7 Cir., 1939, 105 F.2d 704.[7] It is clear, then, that under §§ 196 and 199 of Chapter X, and under § 102's application of § 2 and so much of § 64 as is not concerned with priorities, the bankruptcy court has jurisdiction of tax claims in a reorganization proceeding. It is further clear that subsections k and l of § 57 are also made pertinent to reorganization proceedings. The court below therefore had jurisdiction.

We turn now to the question of whether the court erred in permitting the trustee to recover the post-reorganization interest paid pursuant to the terms of the settlement agreement entered into with the approval of the bankruptcy court. The trustee's claim basically rests on an assertion of mutual mistake as to the liability for interest on unpaid taxes. He seeks reformation of the agreement with a subsequent right of restitution arising therefrom. It is the rule that one alleging mistake must prove it by clear and convincing evidence. Philip-

---

**4.** For text of statutory subsection, see Footnote 2, supra.

**5.** § 57, sub. l, 11 U.S.C.A. § 93, sub. l:
"Whenever a claim shall have been reconsidered and rejected, in whole or in part, upon which a dividend has been paid, the trustee may recover from the creditor the amount of the dividend received upon the claim if rejected in whole, or the proportional part thereof if rejected only in part, and the trustee may also recover any excess dividend paid to any creditor. The court shall have summary jurisdiction of a proceeding by the trustee to recover any such dividends."

**6.** The relevant portion is quoted:
§ 64 sub. a. "The debts to have priority * * * and the order of payment, shall be * * * (4) taxes legally due and owing by the bankrupt to the United States or any State or any subdivision thereof: *Provided,* * * * That, in case any question arises as to the amount or legality of any taxes, such question shall be heard and determined by the court * * *."

**7.** See also Hunt, Tax Claims in Bankruptcy Proceedings; 14 Jour. Nat'l Assn. Ref. in Bankruptcy 3 (1939); Notes, 55 Harv.L.Rev. 1343 (1941); 18 N.Y.U. L.Q.Rev. 399 (1941); 18 Jour. Nat'l Assn. Ref. in Bankruptcy 18 (1943).

pine Sugar Estates Development Co. v. Government of Philippine Islands, 1918, 247 U.S. 385, 38 S.Ct. 513, 62 L.Ed. 1177. Restatement, Contracts, § 511. The evidence does not support the trustee's contention by any standard of proof. His assertion that the provision for payment of interest was included as a mere mechanical matter amounting to inadvertence is not borne out. Every communication we have before us which led up to the agreement contains provision for payment of the interest here involved. We think it was part of the bargained-for consideration in achieving the settlement and that unquestionably there was a meeting of the minds on this aspect of the agreement, that the writing fully and accurately reflects it, and that there was no mistake concerning the intention of the parties.

It is true that the precise legal question as to the interest was unsettled, but the Saper opinion, though not directly in point, looked strongly in the direction of the disallowance of such interest. This state of the law must have strengthened the trustee's bargaining position leading to settlement of the debtor's tax liability which was the fundamental matter in issue. Any mistake as to liability for post-reorganization interest was a collateral mistake, largely immaterial to the final settlement. See Williston on Contracts, §§ 1569, 1570. The distinction between this case and Cloister Printing Corp. v. United States, 2 Cir., 1938, 100 F.2d 355 is that the mistake there was centrally material to the compromise.[8]

■ Even if the trustee had succeeded in proving material mistake, the appropriate remedy would have been rescission rather than reformation. The Treasury gave up a large part of its tax claims in return for settlement of the debtor's liability. If some of the consideration moving to the Treasury is to be restored to the taxpayer, a proportional consideration moving from the Treasury should also be restored in turn. Since that would not be readily possible, the whole settlement would have to be abrogated. Rescission therefore would have been the remedy equitable to both parties, with a subsequent restoration to the *status quo ante*. This would have left the Treasury in a position to re-assert the whole tax liability, part of which it had agreed by compromise to give up in return for the interest payments. And if the Treasury for some reason could not be restored to the *status quo ante,* then serious considerations of estoppel would arise.

The order of the court below was error and will be reversed; this will leave the court's previous approval of the agreement for compromise of the debtor's tax liability in effect. The cause will be remanded for further proceedings, if such should be necessary, under the powers conferred by § 57, sub. k of the Bankruptcy Act, limited by § 199 thereof, consistent with this opinion.

8. This distinction is drawn also in the last paragraph of the opinion in Loeb v.

United States, D.C.S.D.N.Y.1936, 17 F. Supp. 966, 972.