**In re PACIFIC FAR EAST LINES, INC., a Delaware corporation, American Bear Steamship Company, aka Ameri-** can Wheat Steamship Company, a Delaware corporation; Atlantic Bear Steamship Company, aka APG Corporation, a Delaware corporation, Debtors.

**UNITED STATES of America, Appellee,**

v.

**Frederick S. WYLE, Appellant.**

**No. 87–2937.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 13, 1988.

Decided Nov. 8, 1989.

---

Isaac M. Pachulski, Los Angeles, Cal., for appellant.

Timothy F. Brown, Justice Dept., Washington, D.C., for appellee.

Before CHOY, CANBY and NORRIS, Circuit Judges.

CANBY, Circuit Judge:

This appeal arises out of proceedings to liquidate the assets of the Pacific Far East Line, Inc., American Bear Steamship Company and the Atlantic Bear Steamship Co. (collectively, "Far East") under the Bankruptcy Act of 1898, 11 U.S.C. § 1 *et seq.* (repealed) (the 1898 Act).[1] The trustee of Far East, after reaching a compromise with the government on the amount due, paid approximately $776,000 to the Referees' Salary and Expense Fund ("RSEF"), as required by § 40c(2) of the 1898 Act, 11 U.S.C. § 68(c)(2) (repealed). Subsequently, Congress enacted the Referees' Salary and Expense Fund Act of 1984 (the 1984 RSEF), which provided that a fee in excess of $200,000 may not be charged under § 40c(2) "in a case pending under [the 1898] Act on September 30, 1979."[2] The bankruptcy court ordered the government to make a refund pursuant to § 57k & 57*l* of the 1898 Act, 11 U.S.C. § 93(k) & (*l*)

---

1. Because this bankruptcy action arose prior to the enactment of the Bankruptcy Reform Act of 1978, the previous law continues to apply. *See* Section 403(a) of the Bankruptcy Reform Act of 1978, 11 U.S.C. prec. § 101.

2. The Referees' Salary and Expense Fund Act of 1984 is contained in Sections 381 and 382 of the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984). Section 382(e)(1) provides:

Sec. 382. Section 403(e) of the Act of November 6, 1978 (92 Stat. 2683; Public Law 95–598), is amended to read as follows:

(e) Notwithstanding subsection (a) of this section—

(1) a fee may not be charged under section 40c(2)(a) of the Bankruptcy Act [of 1898] in a case pending under such Act on September 30, 1979, to the extent that such fee exceeds $200,000.

(repealed)[3]. The district court reversed. In defending the district court's order in this court, the government contends that the bankruptcy court was without jurisdiction to order a refund. It also argues that, even if jurisdiction was proper, the bankruptcy court abused its discretion in granting the trustee's motion for reconsideration and refund. We reverse the district court and reinstate the bankruptcy court's decision.

## BACKGROUND

Far East's case began on January 31, 1978, as an action for reorganization under Chapter XI of the 1898 Act. The reorganization effort failed and Far East was adjudicated a bankrupt on August 4, 1978. Liquidation commenced under Chapter VII. In Chapter VII proceedings under the 1898 Act, estates were required to make a contribution to the RSEF based on a specified percentage of the total net realization of the estate. The percentage rate was set by the Judicial Conference of the United States. *See* 1898 Act § 40c(2), 11 U.S.C. § 68(c)(2) (repealed). *See generally* 2A *Collier on Bankruptcy*, § 40.01 *et seq.* (14th ed. 1978).

Although such contributions are usually not paid until the end of a bankruptcy case, the trustee, Frederick S. Wyle, and the government began negotiations in the Spring of 1983 over the fee due RSEF on the net realization of the estate through May 31, 1983. The parties held considerably different views of the net realization and, accordingly, the resultant fees. There was no disagreement over the proper percentage formula to be applied to the net realization figure to arrive at the fee. The trustee estimated the net realization at $16,806,871 and the fee at $504,456.13. The government estimated the net realization at $30,626,321 and the fee at $919,039.60. The parties settled on a compromise fee figure and, on April 30, 1984, the bankruptcy court entered an order approving the stipulation and authorizing payment to the government of $776,060.25 as the total fee due to the RSEF for assets processed through May 31, 1983.

On July 10, 1984, the President signed into law the Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984), which included the 1984 RSEF Act and its provision that no RSEF fee in excess of $200,000 may be charged in any case pending under the 1898 Act on September 30, 1979. On July 25, 1984, the trustee wrote the government seeking a refund of the difference between the payment made pursuant to the stipulation, and the new $200,000 cap on RSEF contributions established by the 1984 RSEF Act. The government declined and on March 12, 1985, the trustee filed an "Application on Notice to Establish Procedure re Filing of Motion for Reconsideration of Claim and Related Adversary Proceeding and to Designate Applicability of Adversary Proceeding Rules." The government opposed the motion. On April 24, 1985, the bankruptcy court denied the motion but refused to foreclose the trustee from proceeding with a motion for reconsideration of the payment. The trustee filed that motion on October 25, 1985. The motion was granted and refund of the excess payment ordered on February 27, 1987. The government appealed to the district court, which reversed the bankruptcy court. The trustee appealed to this court. We have jurisdiction over the appeal under § 24 of the 1898 Act, 11 U.S.C. § 47 (repealed).

## STANDARD OF REVIEW

We stand in the same position as did the district court in reviewing the bankruptcy court's order. *In re Center Wholesale, Inc.,* 759 F.2d 1440, 1445 (9th Cir.1985); *In*

---

**3.** Section 57k provides:
   Claims which have been allowed may be reconsidered for cause and reallowed or rejected in whole or in part according to the equities of the case, before but not after the estate has been closed.
   Section 57*l* provides:
   Whenever a claim shall have been reconsidered and rejected, in whole or in part, upon which a dividend has been paid, the trustee may recover from the creditor the amount of the dividend received upon the claim if rejected in whole, or the proportional part thereof if rejected only in part, and the trustee may also recover any excess dividend paid to any creditor. The court shall have summary jurisdiction of a proceeding by the trustee to recover any such dividends.

re Sambo's Restaurants, Inc., 754 F.2d 811, 814 (9th Cir.1985). We review the bankruptcy court's conclusions of law de novo, and its factual findings for clear error. In re Pizza of Hawaii, Inc., 761 F.2d 1374, 1377 (9th Cir.1985); In re Jules Meyers Pontiac, Inc., 779 F.2d 480, 482 (9th Cir.1985). We review for abuse of discretion the bankruptcy court's determination to grant reconsideration under Federal Rule of Civil Procedure 60(b)(6). United States v. Holtzman, 762 F.2d 720, 725 (9th Cir.1985).

## I. THE JURISDICTION OF THE BANKRUPTCY COURT TO ORDER A REFUND OF THE RSEF CONTRIBUTION.

■ The government contends that the bankruptcy court lacked jurisdiction to reconsider the RSEF contribution and order a refund because Congress has never waived sovereign immunity with respect to suits concerning money paid into the RSEF. We disagree. Under § 57k of the 1898 Act, bankruptcy courts are given jurisdiction to reconsider orders, and under § 57l they are given jurisdiction, up until the closing of the estate, to order repayment of funds distributed from the bankruptcy estate. In re Pittsburgh Railways, 253 F.2d 654, 657 (3d Cir.1958). Sovereign immunity protects the property which belongs to the government independent of the bankruptcy process, but, where the government has acquired property through its affirmative actions under the jurisdiction of the bankruptcy court, it consents to the jurisdiction of that court over the property until the case is closed. Id. See also In re Greenstreet, Inc., 209 F.2d 660, 663 (7th Cir. 1954).

■ In support of its contention that the RSEF contribution, once paid, is protected by sovereign immunity from further consideration by the bankruptcy court, the government cites American Guaranty Corp. v. Burton, 380 F.2d 789 (1st Cir. 1967). There a debtor petitioned a district court to order a refund of its RSEF contribution on the ground that the formula established by the Judicial Conference of 1 percent of all recovered assets violated the statutory requirement that the fee be a graduated one. See 11 U.S.C. § 65(b)(1) (repealed). The government raised the defense of sovereign immunity. The First Circuit agreed with the government that allowing the district court to render a judgment for the debtor plaintiff would " 'expend itself on the public treasury * * * [or] interfere with the public administration.' " American Guaranty Corp., 380 F.2d at 791 (quoting Land v. Dollar, 330 U.S. 731, 738, 67 S.Ct. 1009, 1012, 91 L.Ed. 1209 (1947)).

The First Circuit's decision may be distinguishable from our case because in the former action the plaintiff sought relief from a district court (rather than a bankruptcy court) and did not bring the action under § 57 of the 1898 Act. The court itself acknowledged that the funds were "perhaps still subject to possible adjustment," id., although it did not specify how.

To the extent that the First Circuit may have denied the jurisdiction of a bankruptcy court to reconsider RSEF contributions under § 57 of the 1898 Act, we disagree. In re Pittsburgh Railways and In re Greenstreet, Inc. both ruled that monies paid into the treasury through the bankruptcy court to settle tax liabilities of the debtors remained subject to the continuing jurisdiction of the bankruptcy court.[4] We find the reasoning of these cases persuasive and applicable.

The government clearly has an interest in funds paid into the treasury, but when

---

4. In suits to recover tax payments the United States has waived sovereign immunity and permitted actions to be brought in district court under 28 U.S.C. § 1346(a)(1). See American Guaranty Corp., 380 F.2d at 791 n. 1. That fact does not serve to distinguish cases such as In re Pittsburgh Railways from this case. In In re Pittsburgh Railways, the district court sat as a bankruptcy court with its jurisdiction based on

§ 57k of the 1898 Act. The court there rejected the government's contention that the trustee must proceed under 28 U.S.C. § 1346(a)(1). 253 F.2d at 657. See also In re Madden, 388 F.Supp. 47, 50 (D.Idaho 1975) ("Simply because the trustee paid a dividend to the United States, such payment does not sever the Bankruptcy Court's summary jurisdiction by triggering 28 U.S.C.A. § 1346(a)(1)").

those funds derive from the bankruptcy process the government must submit to the continuing jurisdiction of the bankruptcy court. Prompt and effectual administration of bankruptcy estates would be hindered if all claims paid to the government as fees, administrative expenses, or dividends, were forever withdrawn from the jurisdiction of the bankruptcy court the moment they were paid. Under such a rule trustees would have to hold the government's claims until the very end of the case in order to assure that no correction was necessary. A better principle and policy is that " '[h]e who invokes the aid of the bankruptcy court by offering a proof of claim and demanding its allowance must abide the consequences of that procedure.' " *Katchen v. Landy*, 382 U.S. 323, 333 n. 9, 86 S.Ct. 467, 474 n. 9, 15 L.Ed.2d 391 (1966) (quoting *Wiswall v. Campbell*, 93 U.S. 347, 351, 23 L.Ed. 923 (1876)).

## II. RSEF CONTRIBUTION REFUNDS UNDER THE ACT

■ The bankruptcy court held that a refund was required by the plain words of the 1984 RSEF Act, that "a fee may not be charged under § 40c(2)(a) of the [1898] Act in a case pending under such Act on September 30, 1979, to the extent that such fee exceeds $200,000." There is a great deal to be said for that position. No one disputes that Far East's case was pending on September 30, 1979.

The government argues, however, that nothing in § 382(e)(1) requires a refund of a fee already paid, and that Congress could not have intended any such retroactive effect. The government refers to discussions in the legislative history of the amount of fees that would be lost by imposing a cap, and the only Chapter VII cases discussed were three large ones (involving W.T. Grant Co., Associated Transport, and Easter Freight Ways) in which the fees were still owing. H.R.Rep. No. 97–415, 97th Cong., 1st Sess. at 3 (1981).

We do not glean from these references any intent on the part of Congress to exclude from the 1984 RSEF Act's effect fees that had already been paid. The Congressional Budget Office report that Congress relied on noted that "additional cases could be affected by this bill, [but] such cases are rare and there is no basis for estimating any additional costs." *Id.* at 3–4. The usual practice in Chapter VII proceedings is to pay the RSEF fee just prior to closing the case. It is most likely that Congress simply did not consider the particular situation with which we are presented here, where the trustee arranged to pay the fee well in advance of the customary time. The useful question, it seems to us, is not whether Congress contemplated this exact situation, but rather whether the broad intent of Congress in passing the 1984 RSEF Act's $200,000 limitation would be served by requiring a refund of the fees already paid in excess of that sum.

The legislative history demonstrates that Congress' major concern was relieving creditors of the RSEF contribution in the few large-asset cases still pending under the 1898 Act. Congress had already determined prior to passing the Bankruptcy Reform Act in 1978 that the RSEF contribution was "an anachronism." *Id.* at 1. The RSEF was originally established with the intent of making the bankruptcy system self-supporting. By 1978 the fund was running a deficit and Congress determined that the bankruptcy courts ought to be financed out of the general fund in the same manner as other courts. *Id.* at 2. Consequently, Congress abolished the Fund and the percentage fee system as to all cases under the Bankruptcy Reform Act, and set a cap of $100,000 on fees to be paid in pending Chapter XI cases under the 1898 Act.[5] Later, in the 1984 RSEF Act, it imposed a $200,000 cap on fees in Chapter VII cases under the 1898 Act, to make treatment of large Chapter VII cases more nearly consistent with treatment of Chapter XI cases. The intent was therefore the

**5.** Chapter XI Reorganization cases are generally larger asset cases than Chapter VII liquidation cases. Congress was apparently not aware of any Chapter VII cases under the 1898 Act that

would have benefited from a cap at the time the Bankruptcy Reform Act of 1978 was drafted. H.R.Rep. No. 97–415, 97th Cong., 1st Sess. at 1.

same for both limitations: to limit fees "to some reasonable amount in order *to maximize the return of the assets of the estate to the creditors." Id.* at 3 (emphasis added).

A refund in this case clearly serves the congressional intent to maximize returns to the creditors. In the absence of any clear indication that Congress intended to exclude payments that had already been made, we conclude that Far East's refund should be allowed. Congress obviously placed limits on the benefits it sought to confer on creditors, but it drew the limit by requiring only that the cases be pending under 1898 Act on September 30, 1979. Closed cases cannot be reopened for recovery of excess fees, but in a rare if not unique case like the present one, a refund in a pending case is permitted.

Applying § 382(e)(1) with arguably retroactive effect certainly trangresses no general principles of statutory construction. In the absence of an indication of legislative intent concerning retroactivity, courts generally apply the law in effect when the case comes before them. *See Bradley v. School Bd. of City of Richmond,* 416 U.S. 696, 711, 715, 94 S.Ct. 2006, 2018, 40 L.Ed.2d 476 (1974); *Eikenberry v. Callahan,* 653 F.2d 632, 633 (D.C.Cir.1981); *Rawlings v. Heckler,* 725 F.2d 1192, 1194 (9th Cir.1984).

The government points out that this presumption may be overcome where fixed antecedent legal rights or remedies would be destroyed by the application of a law adopted after the beginning of a case. The Supreme Court has rejected the retroactive application of bankruptcy laws that would extinguish preexisting property rights in a case pending when they were enacted. *Holt v. Henley,* 232 U.S. 637, 639, 34 S.Ct. 459, 459–460, 58 L.Ed. 767 (1914); *United States v. Security Indus. Bank,* 459 U.S. 70, 80, 103 S.Ct. 407, 413, 74 L.Ed.2d 235 (1982).

The present case can be distinguished on two grounds. First, the *Holt* doctrine reflects an effort to avoid construing statutes to conflict with the Fifth Amendment. *Holt,* 232 U.S. at 639, 34 S.Ct. at 460. No such problem exists where the property interest involved is that of the federal government itself. Second, the property rights in *Holt* and *Security Indus. Bank* arose prior to and independently of the bankruptcy process. A very different situation is presented here where the property the government is holding (the RSEF contribution) stems directly from the bankruptcy proceeding itself. *See Elliott v. Maynard,* 40 F.2d 17 (6th Cir.1930), *rev'd on other grounds,* 283 U.S. 273, 51 S.Ct. 390, 75 L.Ed. 1028 (1931).

## III. VESTED RIGHTS

█ The district court held that the settlement and payment of the RSEF contribution created a "vested right" which the bankruptcy court was barred from divesting. We disagree that any rights in the RSEF payment had vested at the time that the trustee brought the motion to reconsider.

In *Wayne United Gas Co. v. Owens–Illinois Glass Co.,* 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557 (1937), the Supreme Court upheld a bankruptcy court's equitable power to revise its judgments, but only "before rights have vested on the faith of its action." *Id.* at 137, 57 S.Ct. at 385. *See In re Chinichian,* 784 F.2d 1440, 1443 (9th Cir.1986). The Sixth Circuit has defined the test for whether a bankruptcy payment has vested as "whether, upon granting the motion to reconsider, the court will be able to reestablish the rights of the opposing party as they stood when the original judgment was rendered." *In re Texlon Corp.,* 596 F.2d 1092, 1101 (2d Cir.1979).

Here the government has demonstrated no irreparable harm to its legal rights. It is true that the government will have a smaller portion of the assets of the Pacific Far East Line, but that would have been true if no settlement had been entered in the first place, and the trustee had not made the payment until after the 1984 RSEF Act became law. Finally, to the extent that the RSEF payment could otherwise be treated as a "right" capable of vesting, Congress has itself altered it by the 1984 RSEF Act.

The purpose of § 57*l*, which permits bankruptcy courts to order refunds, would be negated if the fact that payment was received "operate[d] as an estoppel to a petition later filed to reexamine and expunge." *Elliott v. Maynard*, 40 F.2d at 18. *Accord In re Minskoff–Dorman Co.*, 444 F.2d 516, 517 (9th Cir.1971); *In re Jules Meyers Pontiac, Inc.*, 779 F.2d at 482 n. 3 (9th Cir.1985). The government argues that the RSEF contribution is a fee rather than a dividend, and thus should be accorded greater protection. But even if we were to assume that a fee is more secure upon payment than is a dividend, the government cites no authority which finds a vesting of rights through a fee payment in bankruptcy in the absence of actual prejudice.

## IV. SETTLEMENT

The government argues most strongly that the order and payment of $776,000 to the RSEF fund was in compromise and settlement of all claims over the amount of the fee. A subsequent change in legislation, the government contends, is not a proper reason for relieving the parties of the consequences of their bargain. A prediction or judgment about events in the future is not the kind of mutual mistake of fact that permits rescission of an agreement. *See Restatement (Second) of Contracts* § 151, comment a (1981).

It is not impossible, however, to relieve parties of a compromise because they both made an incorrect assumption about the law. In *Cloister Printing Corp. v. United States*, 100 F.2d 355 (2d Cir.1938), a taxpayer and the Internal Revenue Service negotiated a compromise of taxes due on the mutual assumption that jigsaw puzzles were sporting games and taxable as such. The taxpayer was relieved of its compromise when the Supreme Court later ruled that jigsaw puzzles were not sporting games. *Cloister* is close to this case.

The government contends that *Cloister* is distinguishable because the parties were mistaken about what the law was at the time of their compromise; the Supreme Court simply declared later that jigsaw puzzles never had been sporting games. The government contends that Far East simply guessed wrong about the future, and should be held to its choice.

The government's argument overlooks two points. The first is the partially retroactive nature of the 1984 RSEF Act. Congress, too, declared that the RSEF fee never had been due for any Chapter VII case pending on September 30, 1979. The effect of the congressional act, as we have construed it, was no less retrospective than the Supreme Court decision that changed the assumptions of taxability in *Cloister*. Indeed, Far East's case is a stronger one, for the intent of Congress was to make more assets available for creditors in pending Chapter VII cases, and the settlement in this case frustrated that purpose.

The second point that the government overlooks is that there really was no bargain and compromise about the tax rate; both parties assumed that the applicable rates applied without any dollar limit. The disagreement that was compromised was over the total net realization of the estate. It is true that the final stipulation agreed on the amount of the tax, but the tax rate was never bargained for, and no one intended to assume any risks regarding the tax rate.

Finally, the government has suffered no prejudice in reliance on the compromise; it loses nothing but the fee that Congress has determined was not owing. The bankruptcy court did not err in reconsidering the stipulated order.[6]

## V. THE BANKRUPTCY COURT'S RECONSIDERATION

### (A) Source of the Bankruptcy Court Power

The bankruptcy court granted reconsideration under § 57k of the 1898 Act, making the requisite finding of "cause" for

---

**6.** The government also contends that, because the trustee agreed to the order, he is estopped to seek its reconsideration. We reject that argument for the same reasons that we reject the contention that the trustee was bound by the compromise.

reconsidering a previously allowed claim. The government argues that § 57k has been superseded by Fed.R.Civ.P. 60.[7] The district court held that Rule 60(b) was applicable and that its requirements had not been met. It also held that the general equitable power of the bankruptcy court to reconsider its orders was subject to the same reasonable timeliness requirement that applied under Rule 60(b), and that this requirement had not been met.

The government argues at considerable length that § 57k has been either superseded or substantially narrowed by Bankruptcy Rule 924, and that the bankruptcy court's order must meet the requirements of Fed.R.Civ.P. 60(b). We find it unnecessary to deal with the government's arguments regarding § 57k[8] because, unlike the district court, we conclude that the bankruptcy court's reconsideration order met the requirements of Rule 60(b).

■ Rule 60(b) authorizes the court, "upon such terms as are just" to relieve a party from an order for several stated reasons "or (6) any other reason justifying relief...." The enactment of the 1984 RSEF Act, which we today hold applicable to fees already paid in pending cases, is sufficient to qualify as a reason justifying relief.

*(B) Timeliness Under Rule 60(b)(6)*

■ A motion under Rule 60(b)(6) must be brought "within a reasonable time." The district court held that Far East's reconsideration motion was untimely. We disagree. What constitutes a reasonable time "depends on the facts of each case."

*United States v. Holtzman,* 762 F.2d 720, 725 (9th Cir.1985). Major considerations relevant here are whether the government was prejudiced by the delay and whether the trustee had a good reason for failing to take action sooner. *See Id.; Washington v. Penwell,* 700 F.2d 570, 572–73 (9th Cir. 1983); *Morse–Starrett Products Co. v. Steccone,* 205 F.2d 244, 249 (9th Cir.1953) (22 months unreasonable); *Planet Corp. v. Sullivan,* 702 F.2d 123 (7th Cir.1983) (12 months unreasonable); *Clarke v. Burkle,* 570 F.2d 824, 831–32 (8th Cir.1978) (six-year delay not unreasonable where no detrimental legal reliance).

The trustee's motion for reconsideration was filed 18 months after the bankruptcy court entered its original order approving the settlement, and 15 months after the United States denied the trustee's written request for a refund. The record reveals that the original request for a refund was sent within weeks of the passage of the 1984 RSEF Act. The "Application ... to Establish Procedure" was filed eight months later. These earlier actions placed the government on notice that the trustee intended to seek a reopening of the settlement.

The district court pointed out that the trustee should have filed the motion immediately instead of applying for instructions. This may have been a better procedure. Yet the government has conceded that it has suffered no prejudice due to delay. The trustee has cited his responsibilities in managing other aspects of the complicated Far East bankruptcy as his excuse for the delay in filing the motion to reconsider. The bankruptcy judge was in the best posi-

7. Fed.R.Civ.P. 60(b) provides, in pertinent part:
   (b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void;

   (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after the judgment, order, or proceeding was entered or taken.

8. *But see, In re Jules Meyers Pontiac, Inc.,* 779 F.2d 480 (9th Cir.1985) (upholding bankruptcy court's reconsideration of a claim under § 57k).

tion to evaluate the reasonableness of this excuse and the delay in general. We find nothing in the record to conclude that the bankruptcy judge abused his discretion in finding the motion timely.

### (C) The "Extraordinary Circumstances" Requirement of Rule 60(b)(6)

The Supreme Court has construed Fed.R. Civ.P. 60(b)(6) as providing relief to parties who were confronted with extraordinary circumstances that excused their failure to follow ordinary paths of appeal. *Klapprott v. United States*, 335 U.S. 601, 69 S.Ct. 384, 93 L.Ed. 266 (1949).[9] In contrast, where parties have made deliberate litigation choices, Rule 60(b)(6) should not provide a second chance. In *Ackermann v. United States*, 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), the Court explained that:

> [Ackermann's] choice was a risk, but calculated and deliberate ... Petitioner cannot be relieved of such a choice because hindsight seems to indicate to him that his decision not to appeal was probably wrong, ... There must be an end to litigation someday, and free, calculated, deliberate choices are not to be relieved from.

*Id.* at 198, 71 S.Ct. at 211–212. We have since applied this "extraordinary circumstances" standard to relief under Rule 60(b)(6). *See Twentieth Century Fox Film Corp. v. Dunnahoo*, 637 F.2d 1338, 1341 (9th Cir.1981); *Martella v. Marine Cooks & Stewards Union*, 448 F.2d 729, 730 (9th Cir.1971), *cert. denied*, 405 U.S. 974, 92 S.Ct. 1191, 31 L.Ed.2d 248 (1972).

The requirement of "extraordinary circumstances" as defined in *Klapprott* and *Ackermann* is met by Far East here. Far East had no opportunity to follow the normal paths of appeal at the time the order for payment of fees was entered. There

was no ground of appeal; the 1984 RSEF Act had not been passed. Nor was it any part of Far East's litigation strategy to take its chances on the nature of pending legislation. *See In re Pittsburgh Railways*, 253 F.2d 654, 658 (3d Cir.1958) (reconsideration inappropriate where debtor made settlement with government while aware of likely implication of recent Supreme Court decision for matters bargained over); *Weilbacher v. J.H. Winchester & Co.*, 197 F.2d 303, 305 (2d Cir.1952) (reconsideration inappropriate where parties settled in light of likely legislative relief for claimant). The bankruptcy court found that the imposition of a $200,000 cap by the 1984 RSEF Act came as a complete surprise to all parties, and that finding has not been attacked.

This is not a case where a litigant who has let the normal appeals channels lapse seeks to have a second bite at the apple, or where the party seeking reconsideration has ignored normal legal recourses. The bankruptcy court did not abuse its discretion in finding the 1984 RSEF Act an extraordinary circumstance warranting reconsideration of the agreed payment.

### CONCLUSION

We reverse the district court and reinstate the order of the bankruptcy court requiring a refund of the RSEF contribution above the statutory cap of $200,000. The case is remanded to the district court for further proceedings consistent with this decision.

REVERSED.

---

**9.** In *Klapprott,* the Court ordered a reconsideration under Fed.R.Civ.P. 60(b)(6) of a denaturalization ruling that had been final for four years following a default by the petitioner. The Court found significant the fact that the petitioner had been in jail on other charges at the time of his default and had been either incarcerated, indigent, or ill, for most of the other four years, as well as being unrepresented by counsel. In *Ackermann v. United States,* 340 U.S. 193, 71 S.Ct. 209, 95 L.Ed. 207 (1950), the Court declined to order similar relief to petitioners who lost a denaturalization hearing and failed to appeal on the advice of a U.S. Army officer in whose custody petitioners were being held as enemy aliens.